CASS COUNTY ET AL V. DERIOUS RAMBO ET AL.

No. 7651. Decided October 16, 1940.
Rehearing overruled December 4, 1940.
(143 S. W., 2d Series, 916.)

*Newland, Cornett & Whitworth,* of Linden, *Wynne & Wynne,* of Longview, *Virgil Childress, Lawler, Wood & Childress* and *R. O. Kenley, all* of Houston, for plaintiffs in error.

An agreement entered into between the county and an individual regarding the boundary to certain school lands was an agreement to barter away the school lands of the county without any consideration and was void, being in conflict with Article 7, section 6 and Article 3, section 52, of the Texas Constitution, and a judgment entered in pursuance of said void agree-

ment was not res adjudicata or an estoppel to this suit between the same parties to recover the same land. Pulliam v. Runnels County, 79 Texas 363, 15 S. W. 277; Dallas County v. Club Land & Cattle Co., 95 Texas 200, 66 S. W. 294; Williams v. Pure Oil Co. 124 Texas 341, 78 S. W. (2d) 929.

*Ramey, Calhoun & Marsh* and *Lasseter, Simpson & Spreill,* all of Tyler, *Ben A. Harper,* of Olney, Ill., *W. H. Francis* and *Walace Hawkins,* of Dallas, *Carney & Carney,* of Atlanta, Texas, *Vinson, Elkins, Weems & Francis, W. H. Francis, Jr.,* and *Thomas Fletcher,* all of Houston, for defendants in error.

The suit brought in 1912 by Cass County against Derious Rambo disputing the boundary and title to certain lands claimed by both, and which was settled by agreement between the said county acting through its authorized agents and the attorneys for the said Rambo in favor of Rambo, and in pursuance of which judgment was entered dismissing the said suit, being identical with the suit now pending between the same parties and upon the same subject matter, is res adjudicata of the present suit and a complete bar to its maintenance, and the trial court correctly instructed the jury to return a verdict in favor of defendants, and the judgment entered upon that verdict should be affirmed. Turman v. Turman, 64 S. W. (2d) 137; Cain v. Balcom, 130 Texas 497, 109 S. W. (2d) 1044; Camp v. Gulf Production Co., 122 Texas 383, 61 S. W. (2d) 773.

MR. JUDGE GERMAN, of the Commission of Appeals, delivered the opinion for the Court.

This suit was brought by Cass County and John G. K. Towns, its lessee, to recover 66.05 acres of land, alleged to be a part of Cass County School Land. They will be designated plaintiffs. The suit was against Derious Rambo and wife, as well as numerous others claiming under them, and they will be referred to as defendants. The trial in the district court resulted in an instructed verdict in favor of defendants, and this judgment was affirmed by the Court of Civil Appeals. 131 S. W. (2d) 214. The Court of Civil Appeals discussed but one question. Under our view of the case it has been necessary to consider other questions, and this has involved a large amount of work.

For convenience we are reproducing a portion of plaintiffs' principal map, which we think will aid in giving an accurate understanding of much that is shown by the record. The portion of said map is as follows:

For the purpose of this decision it may be taken as admitted by plaintiffs that the Archer Survey, with its south line and southwest corner, the Wilson Robinson Survey, with its south line, southeast and southwest corners, the W. B. Hughes Survey, with its northwest corner and north line, the William Crowder Survey, and the northeast corner of the J. H. Rives Survey, are actually located upon the ground as represented on this map. The real controversy in the last analysis is whether the location of the east line of the Robert Trammel Survey is from the Point A to the Point D on the map, or whether it is from the Point B

to the Point C. If it is from Point A to Point D the land in controversy is a part of the Trammel Survey and Cass County has no title to same.

The Trammel Survey was made July 18, 1849, and patented January 17, 1850. After numerous calls the description reaches the northeast corner of the J. H. Rives Survey (Point J). The next call is as follows: "Thence north seventeen hundred and forty-one varas to stake on south boundary of Wilson Robinson 320 acre survey, bearing trees marked DL." If this 'call be carried to the south boundary line of the Robinson as it is really located on the ground, it will intersect said line at Point A. However the distance will be increased considerably. The next call is "Thence west four hundred and eighty-four varas to his S. W. corner."

The original field notes of Cass County School Land were made the same day the Trammel field notes were made, towit, July 18, 1849. After numerous calls the description reaches the northwest corner of the Hughes Survey (Point E). This corner is called to be in the east line of the Trammel Survey. The next call is as follows: "Thence north with the same 1344 varas to his northeast corner standing in the south boundary line of 320 acres in the name of Wilson Robinson." The succeeding call is as follows: "Thence east 860 varas to his southeast corner." These field notes were corrected May 15, 1871, and the two calls above mentioned were slightly changed so as to read as follows: "Thence north 1183 varas to a stake in south line of 320 acre survey for W. Robinson, a post oak 8 in. dia. brs. S. 21 W. 18 vrs., a hickory S. 15 vrs. Thence E. with S. line of same 854 vrs. to the S. E. corner of said survey."

It is admitted that the land in controversy was not included within the boundaries of Cass County School Land until February 8, 1886. It was patented February 1, 1887. The re-survey on which patent issued, after numerous calls, reached the S. E. corner of the Wilson Robinson Survey. The pertinent calls are as follows: "Thence west with his south line 1344 varas to his S. W. corner, a stake in E. line of Robert Trammel Survey; thence S. with east line of same 910 varas to corner of same; thence E. 401 varas to another corner of same."

It is the contention of plaintiffs that although the east line of the Trammel and the west line of Cass County School Land, as originally surveyed, and as re-surveyed in 1871, call to be common and call to intersect the south line of the Wilson Robinson Survey at the Point A, 484 varas from its S. W. corner, and although said line is definitely and certainly located on the ground, nevertheless the Trammel E. line should not be extended

to the Point A, but should stop at the Point D, which is approximately 1741 varas from the N. E. corner of the Rives Survey. Plaintiffs seek to overcome the call for the true south line of the Robinson Survey and stop the east line of the Trammel Survey at the called distance of 1741 varas from the Rives northeast corner upon the following theory: The Trammel Survey was made in 1849. It is claimed that when that survey was made the County Map of Cass County showed the Robinson Survey to be "several hundred varas south of its true location on the ground," and without showing with any degree of certainty just how far south it was on said map, it is arbitrarily assumed to have been 1741 varas north of the Rives northeast corner. In other words, it is plaintiffs' contention that the call in the Trammel field notes for the south line of the Robinson Survey is a "supposititious or conjectural call, made upon the mistaken belief as to the true location of the Robinson." They therefore seek to come within the purview of such cases as State v. Sullivan, 127 Texas 525, 92 S. W. (2d) 228, and Blake v. Pure Oil Co., 128 Texas 536, 542, 100 S. W. (2d) 1009, 1012.

■ In our opinion, plaintiffs have wholly failed to show cause for allowing call for distance to control over the call for the Wilson Robinson south line as it is admittedly located on the ground. We shall enumerate some of the reasons for this conclusion:

First. In the case of State v. Sullivan, supra, a call for course and distance was permitted to control a call for an adjoinder. That case states correctly the conditions authorizing such a holding. The effect of the decision is that a call for an adjoinder will be rejected, and call for distance will control, if the facts and circumstances show with certainty that the call for an adjoinder was by mistake. In that case, after a full discussion of the evidence, it was said: "The facts which have been discussed conclusively prove Harper's mistake as to the location of the Ransom House Remainder Survey, and bring the case within the rule of Wilson v. Giraud and the other decisions above cited." In the present cast we think the evidence tending to show that the Surveyor made the call for the south line of the Robinson by mistake is practically negligible, when viewed in the light of the overwhelming evidence showing that the call was for the true location of the Robinson south line. So far as we have been able to determine from this record practically the only circumstance to indicate a mistake in the call for the true south line of the Robinson Survey is the fact that the county map of 1848 showed the Robinson some distance south

of its true position, and the further circumstance that in 1886 the Surveyor called for the east line of the Trammel as running south from the southwest corner of the Robinson Survey. We have not been pointed to any evidence that the Surveyor in making the Trammel established any corners at Points B or C or marked any line from B to C or from C to D. There is nothing whatever to show the original footsteps of the Surveyor at these places.

Second. The east line of the Trammel and the west line of Cass County School Land are manifestly but one line. Both surveys were made the same day and the school land survey calls for the east line of the Trammel. Both calls intersect the south line of the Robinson Survey at the same place. It is apparent, therefore, that if the call for the Robinson in the Trammel field notes was conjectural it was likewise conjectural in the Cass County field notes, and the Cass County Survey also stopped at the Point D. However, the Surveyor in the field notes of the Cass County School Land made in 1849 called for a distance of 1344 varas from the northwest corner of the Hughes (Point E) to the south line of the Robinson, and in the field notes of this survey made in 1871 the Surveyor called this line to be 1183 varas. This is approximately the correct distance between these points as they actually exist on the ground. The Surveyor also called for bearing trees at the point of intersection with the Robinson line. According to plaintiffs' theory he would have intersected the Robinson line at a distance of about 230 varas from the northwest corner of the Hughes, and there is no evidence that the bearing trees called for in the field notes of 1871 were found at this conjectural call (Point D). In addition, if the survey stopped at this supposed point, then the call in the Cass County field notes for east with the south line of the Robinson Survey to its southeast corner would have carried the survey approximately to the Point M on the plat. The next call is for the southwest corner of the Archer, and instead of being 250 varas as in the field notes of 1871, or 350 varas as in the field notes of 1849, the distance would have been either 1160 varas or 1260 varas. Furthermore, such description would have excluded from the survey practically all of Block No. 3, which would have been wholly inconsistent with the conduct of Cass County in afterwards selling same by general warranty deed, as will hereinafter be shown.

Third. In 1876 Cass County appointed a surveyor to subdivide its school land for the purpose of making sales. The Surveyor returned field notes and a plat, which were duly ap-

proved by the commissioners court of the county and placed of record. This report showed, among others, Block No. 3, which appears to have been made by an actual survey on the ground. It began at the Point F on the north line of the Hughes Survey. It then went to the South line of the Archer Survey (Point G), thence to the east line of the Robinson Survey, and then south with said line to its southeast corner (Point H). The next call was west with the south line of the Robinson 837 varas to the Trammel Survey (Point A). It then called as follows: "Thence south by the east line of Trammel Survey at 900 varas N. W. corner of the W. B. Hughes Survey."

By general warranty deed Cass County on November 12, 1890, acting by the County Judge and four Commissioners, conveyed Block No. 3 to North Texas Land & Timber Company. This deed contained the identical description of said block as was made by the surveyor in 1876, and called for the east line of the Trammel Survey at the Point A to the Point E. Thereafter, by successive conveyances said Block No. 3 passed to N. Rambo, Jr., who acquired it November 9, 1908.

Fourth. Prior to July 18, 1889, a portion of the Robert Trammel Survey had passed by mesne conveyances to Bridgford & Co. On that date Bridgford & Co. conveyed to Jefferson Lumber Company 351.58 acres of said Trammel Survey, said conveyances, among others, contained the following calls: "Thence with Hughes and Cass County School Land N 3 W 1025 varas to said Robinson south line; thence west with same 484 varas to the S. W. corner of same." This tract passed to the North Texas Land & Timber Company November 4, 1889, and on November 22, 1904, said company conveyed 102 acres of same to D. Rambo and N. Rambo. This conveyance contained a call for Cass County School Land approximately at the places called for same in the preceding deeds. Rambo testified that he took possession of said land in 1905 and had lived on same from 1907 to date of trial.

Fifth. May 12, 1911, Cass County, through its county judge and county commissioners, gave power of attorney to J. W. Barker and L. Luckel to discover and reduce to possession any unsold portion of the Cass County School Land. Barker appears to have been a surveyor. On January 20, 1912, the county filed suit in trespass to try title against Derious Rambo as defendant, seeking to recover title and possession of the land in controversy in this suit. Rambo answered by general denial and plea of not guilty. It appears that thereafter the County Judge of Cass County entered into an agreement with Rambo substantially to

the effect that they would send surveyors out on the ground to make an investigation for the purpose of determining whether or not the land in controversy was a part of the Cass County School Land or a part of the Trammel Survey. It further appears that the County Surveyor of Cass County representing Rambo and J. W. Barker, holding power of attorney from the county, made some kind of investigation, and on their report to the county judge and the commissioners court the cause was on September 18, 1912, dismissed. The order of dismissal was as follows: "This day this cause came on to be heard, and was dismissed by plaintiff at his cost. It is therefore ordered, adjudged and decreed by the Court that this case be dismissed at cost of plaintiff and sureties on his cost bond (naming sureties. one of whom was Barker), for all of which let execution issue."

The exact nature of the agreement as disclosed by the testimony is shown in the opinion of the Court of Civil Appeals. There does not appear to have been filed any assignments of error questioning the fact of an agreement, or claiming that there was an issue of fact as to an agreement. The various assignments are to the effect that the agreement was unauthorized, or void, and that the order of dismissal based thereon did not constitute a judgment upon the merits of the cause. The Court of Civil Appeals held that the order of dismissal constituted in effect a judgment upon the merits of the case and was res adjudicata.

■ We do not agree with the Court of Civil Appeals in this respect. As we construe the agreement that was made between the County Judge and Rambo, it, in the last analysis, amounted only to an agreement to dismiss the cause, and did not constitute a compromise and settlement of the merits of the cause of action. See L. R. A. 1918B, pp. 526 and 527, and authorities collated. However, we do not think it necessary to discuss the legal effect of such an agreement, and the order of dismissal based thereon, nor the authority of the county judge to make such agreement. The important thing is the fact of the action of the County in filing and dismissing the suit under the circumstances as indicated.

It must be borne in mind that Cass County, in approving and having recorded the report of the surveyor and his plat, prepared in 1876, in a most formal and solemn manner, made the representation that the east line of the Trammel Survey was located on the ground from the Point A to Point E on the plat. This survey of 1876 was made about five years after the re-survey of Cass County School Land in 1871, the field notes of

which call for the east line of the Trammel Survey to be located at the same place as above indicated. It cannot be questioned that the report and plat of 1876 were based upon an actual survey. No doubt the surveyor at that time found the original marks of the surveyor as made in 1871. This representation by the county had been on the records for about sixty years at the time of the trial.

But that is not all. On November 12, 1890, by executing deed to North Texas Lumber & Timber Company, conveying Block No. 3, the county again made the representation that the west line of same (Point A to Point E) was the east line of the Trammel Survey. This representation had been on the records almost fifty years when the present suit was filed. Again in 1890, the owners of the Trammel Survey made a conveyance of a part of that survey, calling for its east line to be coincident with the Cass County School Land at the same place. By numerous acts parties on both sides of that location of the line dealt with the lands apparently upon the faith of the representations mentioned.

■ In light of this background, the action of the county in filing the suit in 1912, and afterwards having same dismissed, after an investigation by the county surveyor and a surveyor representing the county under power of attorney, is entitled to great probative force as a confirmation of the previous representations. Especially is this true in light of the fact that Rambo, who was then living upon the land in controversy, in reliance upon the action of the county in dismissing the suit, continued in possession, making improvements upon the land and paying taxes, for more than twenty years, without his rights being questioned until oil production was obtained in the near vicinity shortly before this suit was filed. Private parties have been estopped under circumstances far less impelling. A county was held subject to estoppel in a like situation. Colonial & U. S. Mortgage Co. v. Tubbs, 45 S. W. 623. We are not required, however, to pass upon the question of whether or not the county can be, or is, estopped, and we expressly do not do so. All of these facts have been enumerated to show that there is no basis for invoking the rule that would make a call for distance predominate over a call for an adjoinder, on the assumption that the call for the adjoinder was by mistake or by conjecture.

■ For the reasons above stated, it is our conclusion that the county failed to show by any substantial evidence that the call for the south line of the Robinson Survey in the Trammel field notes was by conjecture and was a mistake, but on the other

hand the evidence shows practically conclusively that the call was for the true south line of the Robinson, which is admittedly well established on the ground at the Points H A B. Because of this it is our opinion that plaintiffs failed as a matter of law to meet the burden of proof of showing that the call for the Robinson south line was conjectural, and that the Trammel east line stopped at the Point D. The Trammel Survey being senior to Cass County School Land, plaintiffs were not entitled to recover.

There are other propositions relating to the true location of the Davenport Survey, which is claimed to be partly in conflict with the land in controversy. However, the location of the Davenport Survey, under the record in this case, becomes immaterial, as there is no controversy in this case between the owners of the Trammel and the owners of the Davenport. We are therefore not required to discuss those propositions.

For the reasons stated herein, the judgment of the Court of Civil Appeals is affirmed.

Opinion adopted by the Supreme Court October 16, 1940.

Rehearing overruled December 4, 1940.