# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-09-00122-CV

Carl T. Wibbenmeyer, Appellant

v.

TechTerra Communications, Inc.; Christian Behier; and Adella Almazan-Seabolt,
Appellees

**FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 368TH JUDICIAL DISTRICT
NO. 06-881-C368, HONORABLE BURT CARNES, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

Appellant Carl T. Wibbenmeyer appeals a district court judgment that awarded appellees TechTerra Communications, Inc.; Christian Behier; and Adella Almazan-Seabolt attorney's fees but no other relief. Wibbenmeyer argues that there is no statutory or contractual basis for awarding attorney's fees and that, if there was, the amount awarded was an abuse of discretion. We agree that there was no statutory or contractual basis for awarding attorney's fees. Consequently, we will reverse and render judgment that appellees take nothing on their attorney's fee claim.

## BACKGROUND

The facts underlying this appeal are detailed in *Wibbenmeyer v. Techterra Communications, Inc.*, No. 03-07-00038-CV, 2008 Tex. App. LEXIS 2628, at *1-6 (Tex. App.—Austin 2008, no pet.). To summarize, Wibbenmeyer, Behier and Almazan-Seabolt

were the co-founders, principal shareholders, and directors of TechTerra Communications, Inc. TechTerra's bylaws provided that the corporation would have three directors elected annually by the shareholders. The bylaws permitted amendments by the vote of shareholders owning more than sixty percent of the corporation's outstanding shares and specifically provided that the number of directors could be increased or decreased by amendment, provided no decrease would have the effect of shortening the term of any incumbent director. The bylaws further provided that an individual director could be removed from office "only with good cause through judicial declaration."

Behier, Almazan-Seabolt, and Wibbenmeyer were also signatories to a shareholders' agreement. The agreement's recitals reflected that these individuals owned the entirety of TechTerra's issued and outstanding shares. Paragraph 9 of the shareholders' agreement provided:

> For so long as the Board of Directors consists of three or more members, the parties to this Agreement agree to vote all of their shares for the election of directors as follows: one nominee of Christian Behier, one nominee of Adella Almazan, and one nominee of Carl T. Wibbenmeyer.

Relations between Wibbenmeyer and the other principal shareholders eventually soured. Litigation began when Wibbenmeyer filed a petition for mandamus to compel access to corporate records. The other principal shareholders began taking steps that would enable them to remove Wibbenmeyer as a director. After unsuccessfully moving to remove Wibbenmeyer as a director,[1] Behier called a special meeting of the shareholders with the stated purpose "to amend the Corporation's Bylaws to reduce the number of directors, revise the effect of the reduction in

---

[1] No vote was taken on the motion.

2

the number of directors and to change the provisions for removing directors." Wibbenmeyer responded by filing a supplemental petition asserting causes of action for breach of the shareholders' agreement and tortious interference with it. He alleged that appellees' actions threatened his rights under paragraph 9 of the shareholders' agreement "by which Christian Behier and Adelia Almazan-Seabolt are obligated to vote for the nominee of Plaintiff for Director." Wibbenmeyer sought only injunctive relief, attorney's fees, and interest on the fees. He requested a temporary restraining order, temporary injunction, and permanent injunction to restrain the other shareholders from holding the meeting or amending the bylaws to reduce the number of directors or change the requirements for removing directors.

The district court granted a temporary restraining order that barred appellees from removing any current TechTerra directors but did not prohibit them from holding the shareholders' meeting or changing the bylaws. The shareholders' meeting went forward as scheduled. Wibbenmeyer did not attend. The other shareholders amended the bylaws by reducing the number of directors to a minimum of two, deleting the requirement of a judicial declaration of good cause to remove a director, and permitting shareholders or directors to vote to remove a director.

Appellees filed a response to Wibbenmeyer's application for injunctive relief. They asserted that Wibbenmeyer had failed to demonstrate a viable cause of action because he had not alleged "any activity that has violated or would breach either the bylaws or shareholders' agreement," nor a probable right to recover because he was "complaining of activities that are . . . permitted by TechTerra's governing documents." Appellees prayed that the district court deny

3

Wibbenmeyer's application. They also prayed for attorney's fees without pleading a statutory or contractual basis for such an award.

The parties joined issue as to whether the shareholder agreement prevented appellees from reducing the number of directors below three and avoiding their obligations under paragraph 9 of the agreement to elect a nominee of Wibbenmeyer as one of the corporation's three directors. Appellees argued that the first clause of paragraph 9—"For so long as the Board of Directors consists of three or more members . . ."—was a condition precedent to the obligations set forth in the succeeding portions of the paragraph and that nothing in the shareholders' agreement prohibited them from reducing the number of directors. Wibbenmeyer replied that the first clause of paragraph 9 should instead be construed as a covenant requiring that the signatories maintain three directors, such that appellees could not avoid their obligations in paragraph 9 by reducing the number of directors.

Following a hearing, the district court denied both the temporary injunction and mandamus and subsequently entered findings of fact and conclusions of law. Among other findings, the district court found that Wibbenmeyer was unlikely to prevail on either his breach-of-contract or tortious interference claim and that "[t]he shareholder agreement makes no provision requiring the parties to vote their shares in the election of directors in any particular way if the Techterra Board of Directors consists of less than three directors."

Wibbenmeyer appealed the denial of the temporary injunction to this Court. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(4) (West 2008). We temporarily enjoined appellees "from taking any action removing Carl T. Wibbenmeyer from the Board of

4

TechTerra Communications, Inc.," pending consideration of the appeal. While that appeal was pending, appellees filed an original counterclaim in the district court seeking declarations under the Uniform Declaratory Judgments Act (UDJA).[2] Appellees also pled what they termed a common-law cause of action for "contract construction."[3] Appellees further pled that they were entitled to attorney's fees under both causes of action. Subsequently, appellees filed a motion for sanctions against Wibbenmeyer under rule 13 of the Texas Rules of Civil Procedure and chapter 10 of the civil practice and remedies code.

This Court later affirmed the district court's denial of the temporary injunction. *See Wibbenmeyer*, No. 03-07-00038-CV, 2008 Tex. App. LEXIS 2628, at *17. Central to our analysis,

_____

[2] Appellees sought the following declarations:

- The voting covenant of paragraph 9 of the Shareholder Agreement applies only in the event TechTerra's Board of Directors consists of three or more directors; and conversely . . . does not apply if the Board of Directors consists of less than three directors.

- Neither TechTerra's Articles of Incorporation, its bylaws nor its Shareholder Agreement contain any restrictions on shareholders amending TechTerra's bylaws to provide that the Board of Directors shall consist of two members.

- On December 19, 2006, a TechTerra shareholders meeting convened at which the holders of sixty percent or more of the then outstanding shares of TechTerra stock voted to approve, and thereby approved, a bylaw change reducing the number of members on its Board of Directors from three members to two.

- Defendants Behier and Seabolt did not breach the Shareholder Agreement by voting their shares to amend TechTerra's bylaws to reduce the number of members of its Board of Directors from three members to two.

- Defendants Behier and Seabolt will not breach the Shareholder Agreement by refusing to elect Wibbenmeyer to the Board of Directors when the Board consists of only two members.

[3] Appellees sought relief substantively identical to the first two declarations they sought.

5

we construed paragraph 9 of the shareholders' agreement and concluded that "For so long as the Board of Directors consists of three or more members . . ." was a condition on the application of the paragraph's voting requirements, as appellees had urged, not a covenant to vote for at least three directors, as Wibbenmeyer had maintained. *Id.* at *16-17. Consequently, we held that the district court had not abused its discretion in determining that Wibbenmeyer was unlikely to prevail on his breach-of-contract claim. *Id.* We likewise held that the district court had not abused its discretion in finding Wibbenmeyer unlikely to prevail on his tortious interference claim where the sole interference Wibbenmeyer had alleged was that of two fellow signatories to the contract. *Id.* at *8-9. In conclusion, we emphasized that "[w]e are reviewing only the trial court's decision not to enter a temporary injunction" and that our "opinion is not to be interpreted as a comment on the merits of the underlying cause of action beyond that required by the standard of review." *Id.* at *17.

A few days after we issued our opinion in the interlocutory appeal, Wibbenmeyer filed a "Notice of Nonsuit With Prejudice for All His Causes of Action." The notice represented that following this Court's opinion in his interlocutory appeal, Wibbenmeyer had resigned as a director of TechTerra, that his resignation had been accepted and, for these reasons, his "causes of action in this case, and the remedies sought by [him], are not longer in issue or dispute."

Approximately two weeks thereafter, appellees filed a first amended counterclaim. In this pleading, appellees nonsuited their causes of action under the UDJA and for "contract construction" by omitting them and instead pled claims solely for attorney's fees under chapter 38 of the civil practice and remedies code, *see* Tex. Civ. Prac. & Rem. Code Ann. § 38.001 (West 2008), and an attorney's fee provision in the shareholders' agreement.

The parties subsequently tried appellees' attorney's fee claims to the district court. The court ultimately rendered judgment awarding appellees $84,623.67 in attorney's fees through trial plus a total of $32,500 in contingent post-judgment and appellate attorney's fees. The judgment awarded no other relief. The district court subsequently entered findings of fact and conclusions of law. This appeal followed.

## ANALYSIS

Wibbenmeyer brings three issues in this appeal. In his first issue, Wibbenmeyer argues that no statutory or contractual provision supports appellees' attorney's fee award. In his second issue, Wibbenmeyer asserts that none of appellees' counterclaims pending at the time of his nonsuit survived the nonsuit and thus could not be "amended" thereafter. In his third issue, Wibbenmeyer challenges the amount of attorney's fees the district court awarded. We need only address the first issue.

"Texas has long followed the 'American Rule' prohibiting [attorney's] fee awards unless specifically provided by contract or statute." *MBM Fin. Corp. v. The Woodlands Operating Co.*, 292 S.W.3d 660, 669 (Tex. 2009) (citing *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310-11 (Tex. 2006)). Issues concerning the availability of attorney's fees under statute or contract present questions of law that we review de novo. *See Holland v. Wal-Mart Stores, Inc.*, 1 S.W.3d 91, 94 (Tex. 1999); *In re Lesikar*, 285 S.W.3d 577, 583 (Tex. App.—Houston [14th Dist.] 2009, no pet.).

In their live pleadings, the sole bases appellees pled for recovering attorney's fees were chapter 38 of the civil practice and remedies code and an attorney's fee provision in the

7

shareholders' agreement. These were also the sole grounds for awarding attorney's fees that the district court identified in its findings of fact and conclusions of law.

Chapter 38 is not a basis for recovering attorney's fees in this case because appellees did not assert a claim for breach of contract, did not prevail on one, and did not recover damages. *MBM Fin. Corp.*, 292 S.W.3d at 666 ("To recover fees under [chapter 38], a litigant must do two things: (1) prevail on a breach of contract claim, and (2) recover damages. The second requirement is implied from the statute's language: for a fee recovery to be 'in addition to the amount of a valid claim,' the claimant must recover some amount on that claim."); *see* Tex. Civ. Prac. & Rem. Code Ann. § 38.001 ("A person may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for . . . an oral or written contract.").

As for whether attorney's fees were authorized under the shareholder agreement, this question turns on construction of that agreement. *See Intercontinental Group P'ship v. KB Home Lone Star L.P.*, 295 S.W.3d 650, 635 (Tex. 2009) ("Parties are free to contract for a fee-recovery standard either looser or stricter than Chapter 38's."). Contract terms are given their plain, ordinary, and generally accepted meanings unless the contract itself shows them to be used in a technical or different sense. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005). We must construe the contract as a whole "in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." *Id.* "No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument." *Shell Oil Co. v. Khan*, 138 S.W.3d 288, 292 (Tex. 2004).

8

Further, in determining the meaning of contract terms, we may also consider the context of the circumstances existing at the time the contract was executed and the particular business activity sought to be served. *See Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996); *Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 530 (Tex. 1987).

If we can give the contract a definite or certain legal meaning, it is unambiguous and we construe it as a matter of law. *Willis v. Donnelly*, 199 S.W.3d 262, 275 (Tex. 2006); *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003). If, on the other hand, the contract is subject to two or more reasonable interpretations, it is ambiguous, which creates a fact issue as to the parties' intent. *Columbia Gas Transmission Corp.*, 940 S.W.2d at 589. Whether a contract is ambiguous is a question of law. *Id*. Neither party has asserted that the attorney's fee provision at issue here is ambiguous and, as explained below, we conclude it is not.[4]

Paragraph 6 of the shareholders' agreement provides:

> This Agreement shall be binding upon and enure to the benefit of the parties hereto, their representative heirs, successors, and assigns, is performable in Travis County, Texas and shall be governed by the laws of the State of Texas. This Agreement embodies the entire agreement of the parties with respect to the matters addressed hereby. This Agreement may be enforced by specific enforcement. *Any party that successfully enforces this agreement in a court of law or equity shall be entitled to its attorney and expert witness fees.*

---

[4] Appellees assert that we should construe the shareholders' agreement against Wibbenmeyer, who drafted it. This principle applies only when a contract is ambiguous. *See Gonzalez v. Mission Am. Ins. Co.*, 795 S.W.2d 734, 737 (Tex. 1990). Consequently, it does not apply here.

9

(Emphasis added.) Appellees rely on paragraph six's final sentence, italicized above, as a basis for recovering attorney's fees. Agreeing that appellees could recover fees under paragraph 6, the district court concluded as a matter of law that appellees "were prevailing parties because they successfully enforced the shareholders' agreement, and, therefore, are entitled to an award of attorney and expert witness fees pursuant to the shareholders' agreement."

On appeal, the parties join issue as to whether appellees "successfully enforce[d]" the shareholders' agreement "in a court of law or equity." Wibbenmeyer focuses on the meaning of "enforce." Citing cases that have addressed the meaning of the term, Wibbenmeyer contends that "enforce" means "to cause to be executed or performed; to cause to take effect; to compel obedience to; to put into force," *Dozier v. City of Gatesville*, 51 S.W.2d 1091, 1094 (Tex. Civ. App.—Waco 1932, no writ), "the act of putting something such as law into effect; the execution of a law; the carrying out of a mandate or command," *Siskin Enters., Inc. v. W.B. Stoddard, Jr., Inc.*, 147 F. Supp. 2d 1126, 1128 (D. Utah 2001) (citing Black's Law Dictionary 528 (6th ed. 1991)), and "mandat[ing] compliance with existing contractual obligations," *id.* at 1129 (further holding that "[a] suit to validate or clarify rights does not constitute an action to *enforce* such rights."). These definitions, in Wibbenmeyer's view, denote "some <u>offensive</u> success that Appellees did not pursue or achieve."[5]

---

[5] In a single sentence of his opening brief, Wibbenmeyer asserts that the "fee provision does not, as the trial court concluded, award fees to any prevailing party, but only a prevailing party who has 'specifically enforced' *and* 'successfully enforced' the agreement." (Emphasis added.) This sentence potentially suggests that Wibbenmeyer is contending "successfully enforces" refers solely to successful enforcement by specific performance, which is authorized in the immediately preceding sentence of paragraph 6. However, Wibbenmeyer continues, "It is undisputed that Appellees never sought specific performance *or* otherwise asserted *or* prevailed on any affirmative claims to

10

Appellees, Wibbenmeyer urges, obtained no offensive success causing the shareholders' agreement to be executed or performed or mandating compliance with it, but only defended against his claims. And if any right was "enforced" by appellees in the litigation, Wibbenmeyer adds, it was their rights under the bylaws to reduce the number of directors below three, not any rights they possessed under the shareholders' agreement. It was not enough that "[t]he proceedings may have ultimately vindicated Appellees' interpretation of the parties' rights," Wibbenmeyer reasons, because "they cannot be construed as an enforcement action that would allow them to recover fees under the plain language of the fee provision."

In response, appellees assert that "successfully enforces" is synonymous with "prevailing party" as understood in attorney's fee jurisprudence and that they "prevailed as a matter of law" when Wibbenmeyer nonsuited his claims. Appellees "completely concur" with Wibbenmeyer "as to the meaning of 'enforce' in Black's Law Dictionary and in both Texas and Federal case law," citing additional authorities in support of that view. *See Sheppard v. Thomas*, 101 S.W.3d 577, 582 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) ("When used as a verb, 'enforce' means 'to give force or effect to (a law, etc); to compel obedience to.") (citing Black's Law Dictionary 549 (7th ed. 1999)); Black's Law Dictionary 528 (6th ed. 1990) ("to put into execution; to cause to take effect; to make effective; as, to enforce a particular law, a writ, a

'enforce' the Shareholders' agreement." (Emphases added.) Elsewhere in his briefing, Wibbenmeyer similarly argues that "successfully enforces" requires some form of affirmative relief not limited to specific performance and present no argument or authority to support a position that "successfully enforces" refers solely to enforcement by specific performance. To the extent Wibbenmeyer is contending that "successfully enforces" refers solely to enforcement by specific performance, we conclude that argument is waived, *see* Tex. R. App. P. 38.1(i), and we express no opinion regarding such a construction.

judgment, or the collection of a debt or fine; to compel obedience to"). However, they urge that these definitions are synonymous, or nearly so, with the definitions of "prevail" and "successful party." *See id.* at 1188 (defining "prevail" as "to be or become effective or effectual, to be in force, to obtain; . . . to succeed; to win"), 1430 ("successful party" is "one who obtains judgment of competent court vindicating civil claim of right . . . . *See also* Prevailing Party."). Based on the proposition that "successfully enforces" means "prevailing party," appellees rely on the Texas Supreme Court's recent analysis of a contractual "prevailing party" attorney's fee provision in *Intercontinental Group Partnership v. KB Home Lone Star L.P.*, 295 S.W.3d 650, and several court of appeals opinions that have addressed worker's compensation claimants' entitlement to attorney's fees under labor code section 408.221(c) after carriers nonsuit their suits for judicial review from an adverse appeals panel ruling. In reply, Wibbenmeyer argues that even if "successfully enforces" is synonymous with "prevailing party," appellees did not "prevail" because none of the parties' claims for affirmative relief (apart from attorney's fees) proceeded to final judgment but were both voluntarily nonsuited. *See Cigna Ins. Co. of Tex. v. Middleton*, 63 S.W.3d 901, 903 (Tex. App.—Eastland 1999, pet. denied) (no "prevailing party" under labor code section 408.221(c) where both the workers' compensation carrier and the claimant nonsuited their claims).

We begin our analysis of paragraph 6's attorney's fee provision with three observations regarding its text. First, the provision required appellees to prove they "*successfully* enforce[d] [the shareholders'] agreement in a court of law or equity." Appellees assert that "successfully" incorporates the concept of "prevailing party" as understood in attorney's fees jurisprudence, and the parties presents no reason for us to think otherwise. Black's Law Dictionary

12

equates "prevailing party" with "successful party," as appellees observe. *See* Black's Law Dictionary 1145 (7th ed. 1999) ("prevailing party" is "[a] party in whose favor a judgment is rendered, regardless of the amount of damages awarded . . . Also termed *successful party*."). Moreover, Texas courts have construed the terms similarly. For example, Rule of Civil Procedure 131 awards court costs to "[t]he successful party in a suit," and "successful party" has been held to mean "one who obtains judgment of a competent court vindicating a civil right or claim," *see, e.g., City of Houston v. Woods*, 138 S.W.3d 574, 581 (Tex. App.—Houston [14th Dist.] 2004, no pet.), while "prevailing party" has been held to mean the party that either successfully prosecutes the action or defends against it on the merits, "prevailing on the main issue" or being "vindicated by the judgment rendered." *See Indian Beach Prop. Owners' Ass'n v. Linden*, 222 S.W.3d 682, 696-97 (Tex. App.—Houston 2007, no pet.); *Jakab v. Gran Villa Townhouses Homeowners Ass'n, Inc.*, 149 S.W.3d 863, 867 (Tex. App.—Dallas 2004, no pet.); *City of Amarillo v. Glick*, 991 S.W.2d 14, 17 (Tex. App.—Amarillo 1997, pet. denied); *see also Dear v. City of Irving*, 902 S.W.2d 731, 739 (Tex. App.—Austin 1995, writ denied) (equating "successful party" under rule 131 with "prevailing party").

As appellees point out, the Texas Supreme Court has recently refined the "prevailing party" analysis by applying federal jurisprudence when construing a "prevailing party" contractual attorney's fee provision that, like the one here, did not define the term. *Intercontinental Group P'ship*, 245 S.W.3d at 652, 653. In *Intercontinental*, the plaintiff sued the defendant for breach of contract. A jury found that the defendant had breached the contract but awarded no damages. The trial court rendered judgment awarding the plaintiff only attorney's fees on the contract claim and

13

no other monetary, equitable, or declaratory relief. For guidance as to the "ordinary meaning" of "prevailing party," the court looked to the United States Supreme Court's federal jurisprudence construing that term as it is used in federal statutes. *Id.* at \*6.

As the Texas Supreme Court noted, the touchstone of the "prevailing party" inquiry under federal law is whether there has been "judicially sanctioned" "relief on the merits"—such as a judgment or "comparable relief through a consent decree or settlement"—that "materially alters the legal relationship between the parties." *Id.* at \* 6-9 (quoting *Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992)); *see also Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health and Human Resources, Inc.*, 532 U.S. 598, 603-05 (2001). Under this standard, the Texas Supreme Court further emphasized, "the *judgment*," not preliminary rulings or findings, "is critical to the prevailing-party determination." *Intercontinental Group Partnership*, 245 S.W.3d at 656 (citing *Buckhannon*, 532 U.S. at 603-04). Applying these principles, the supreme court concluded that the plaintiff was not the "prevailing party":

> It seems beyond serious dispute that KB Home [the plaintiff] achieved no genuine success on its contract claim. Whether a party prevails turns on whether the party prevails upon the court to award it something, either monetary or equitable. KB Home got nothing except a jury finding that Intercontinental [the defendant] violated the contract. It recovered no damages; it secured no declaratory or injunctive relief; it obtained no consent decree or settlement in its favor; it received nothing of value of any kind . . . . Nor do we perceive any manner in which the outcome materially altered the legal relationship between KB Home and Intercontinental. Before the lawsuit, Intercontinental was selling lots that were promised to KB Home. After the lawsuit, Intercontinental had sold the promised lots and was not required to pay a single dollar in damages or do anything else it otherwise would not have done. . . . A stand-alone finding on breach confers no benefit whatsoever.

14

*Id.* at \*10-11. In sum, appellees must have been "successful" or "prevailed" under this standard to recover attorney's fees under paragraph 6 of the shareholders' agreement.

Our second observation concerning the text of the shareholders' agreement's attorney's fees provision is that it requires appellees to prove they "successfully *enforce[d]*" (or "prevailed" in enforcing) "[the shareholders'] agreement in a court of law or equity." The ordinary meaning of "enforce," the parties agree, denotes putting something (here, the shareholders' agreement) into execution, causing it to take effect or be effective, or compelling obedience to it. "Enforce" thus denotes some form of affirmative action in regard to one's rights under the shareholders' agreement, and is somewhat narrower than the act of merely obtaining a declaration as to one's rights under the agreement. *See Siskin Enters., Inc.*, 147 F. Supp. 2d at 1129; *cf. Intercontinental Group P'ship*, 295 S.W.3d at 652 (contractual provision awarding attorney's fees to "prevailing party" in "an action to enforce the terms of this Contract *or to declare rights hereunder*"); *Probus Props. v. Kirby*, 200 S.W.3d 258, 265 (Tex. App.—Dallas 2006, pet. denied) (lease awarded attorney's fees to "prevailing party" "if, due to any breach or default, it becomes necessary for one of the parties to retain an attorney to 'enforce *or defend* any of its rights or remedies hereunder'").

Third, it is not enough that appellees prove they were "successful" or "prevailed" in *litigation* through which *Wibbenmeyer sought to enforce* the shareholders' agreement. Instead, the provision explicitly requires that appellees succeed or prevail in *enforcing* the shareholders' agreement, not merely in thwarting Wibbenmeyer's attempt to do so. *Cf. Intercontinental Group P'ship*, 295 S.W.3d at 652 (contract awarded attorney's fees to "prevailing party" in "*an action to*

15

enforce the terms of this Contract or to declare rights hereunder"); *Alan Reuber Chevrolet, Inc. v. Grady Chevrolet, Ltd.*, 287 S.W.3d 877, 881 (Tex. App.—Dallas 2009, no pet.) (contract provided, "In the event of *any litigation between the Parties* hereto *to* enforce any provisions or rights hereunder, the unsuccessful party *to such litigation* shall pay [attorney's fees] to the successful party."); *Probus Props.*, 200 S.W.3d at 265 (awarding fees to "prevailing party" in the event "it becomes necessary for *one of the parties* to retain an attorney to 'enforce or defend any of its rights or remedies hereunder'").

We now examine the record to determine whether, in light of the foregoing observations, it supports the district court's legal conclusion that appellees "successfully enforced the shareholders' agreement, and, therefore, are entitled to an award of attorney and expert witness fees pursuant to the shareholders' agreement." Wibbenmeyer asserts that appellees could not have "enforced" the shareholders' agreement because they sought only to effectuate their right under the corporate bylaws to change the number of directors, and not any right they possessed under the shareholders' agreement. We disagree to the extent that, in the underlying litigation, appellees sought to "enforce" under the ordinary meaning of that term (i.e., give force or effect to, effectuate) what they asserted was a condition precedent stated in the agreement—"For so long as the Board of Directors consists of three or more members . . ."—to the shareholders' obligations under paragraph 9 to vote for one director nominee each from Behier, Almazan-Seabolt, and Wibbenmeyer. *See, e.g.*, *Comsys Info. Tech. Serv., Inc. v. Twin City Fire Ins. Co.*, 130 S.W.3d 181, 192 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (parties dispute whether a condition precedent to insurance coverage can be "enforced"). Although appellees ultimately did not seek or

16

obtain relief on any affirmative claims to enforce this asserted condition, they nonetheless sought to effectuate it as essentially an affirmative defense to Wibbenmeyers' claims seeking injunctive relief to enforce his rights under paragraph 9.

However, even if "enforcing" the shareholders' agreement in this manner was appellees' litigation goal, paragraph 6 of the agreement required that they also have been "successful" or "prevailed" in pursuing this goal. As Wibbenmeyer emphasizes, and appellees acknowledge, Wibbenmeyer's claims were terminated by his voluntary nonsuit and not by a judgment on the merits. As noted, the district court's final judgment awarded only attorney's fees to appellees and no other relief. Neither the judgment nor any prior rulings of the district court purported to dispose of Wibbenmeyer's claims on the merits. The court's sole rulings in relation to the claims were its temporary restraining order and subsequent denial of Wibbenmeyer's request for a temporary injunction, which had the legal effect of determining only whether the court would preserve the status quo pending the court's disposition of Wibbenmeyer's claims on the merits. *See Wibbenmeyer*, 2008 Tex. App. LEXIS 2628, at \*17. That issue was mooted, along with the controversy underlying Wibbenmeyer's claims, at the moment Wibbenmeyer filed his notice of nonsuit. *See University of Tex. Med. Branch at Galveston v. Estate of Blackmon*, 195 S.W.3d 98, 100 (Tex. 2006) (per curiam).

Further, because Wibbenmeyer's nonsuit is not a ruling on the merits, it has no res judicata effect. *Citizens Ins. Co. of Am. v. Daccach*, 217 S.W.3d 430, 449 (Tex. 2007).[6] Thus,

---

[6] Although Wibbenmeyer's notice of nonsuit stated that his dismissal was "with prejudice," that fact, in itself, does not change the analysis, and appellees do not contend it does. A voluntary dismissal "with prejudice" does not have res judicata effect unless the trial court renders judgment

17

with respect to the contractual rights that were the basis of Wibbenmeyer's claims and appellees' defenses to those claims, the nonsuit's effect was to return the parties to the identical legal position they were in before Wibbenmeyer filed suit. *See Crofts v. Court of Civil Appeals*, 362 S.W.2d 101, 104 (Tex. 1962). In short, there is no final judgment or order in this case that has effected a change in the parties' legal positions with respect to their rights under paragraph 9 of the shareholders' agreement, including the asserted condition precedent that appellees sought to enforce.[7]

Wibbenmeyer argues that because appellees never obtained a final judgment on the merits of his claims, appellees cannot be "successful" or "prevailing" in enforcing any rights under the shareholders' agreement. *See Cricket Comm., Inc. v. Trillium Indus., Inc.*, 235 S.W.3d 298, (Tex. App.—Dallas 2007, no pet.) (neither plaintiff nor defendant was "prevailing party" where plaintiff had nonsuited claim); *Doolin's Harley-Davidson, Inc. v. Young*, No. 06-05-00101-CV, 2006 Tex. App. LEXIS 116, at *10-11 (Tex. App.—Texarkana 2006, no pet.) (defendant was not "prevailing party" because plaintiff's nonsuit was "a termination of the pleaded causes of action and asserted defenses without an adjudication of their merits that returns the litigants to the positions they occupied before the plaintiff invoked the court's jurisdiction"); *see also Cigna*, 63 S.W.3d

---

dismissing the claims on their merits, as occurs when a court renders judgment dismissing a suit pursuant to a settlement agreement. *See Cass Cty. v. Rambo*, 143 S.W.2d 916, 920 (Tex. 1940) (holding that voluntary dismissal pursuant to agreement to dismiss not amounting to settlement on merits did not have res judicata effect); *cf. Rhodes v. Prudential Leasing Co.*, 413 S.W.2d 404, 407 (Tex. Civ. App.—Austin 1967, no writ) (invoking the "rule that a judgment of dismissal entered into by agreement of the parties in pursuance of a compromise, or settlement of a controversy, becomes a judgment on the merits"). Appellees obtained no such judgment or order here.

[7] Of course, this Court's opinion in Wibbenmeyer's interlocutory appeal, while not directly addressing the merits of his claims, may nonetheless be instructive regarding the legal viability of any future similar claims.

18

at 903 (workers' compensation claimant was not "prevailing party" entitled to attorney's fees under labor code section 408.221(c) where both parties nonsuited in a suit for judicial review of the claimant's administrative benefits determination). Appellees counter by relying on a line of cases involving suits for judicial review brought by workers' compensation carriers to challenge adverse appeals panel determinations of benefits.[8] In such cases, section 408.221(c) of the labor code authorizes the claimant to recover attorney's fees if he or she "prevails on an issue on which judicial review is sought by the insurance carrier." Tex. Lab. Code Ann. § 408.221(c) (West 2006). These courts have held that where the carrier nonsuits its suit, the claimant is the "prevailing party" for purposes of section 408.221(c) because the nonsuit, by returning the parties to the same legal position they were in before the carrier filed suit, had the effect of making the prior administrative decision in favor of the claimant final. *See, e.g.*, *Pacific Employers Ins. Co. v. Torres*, 174 S.W.3d 344, 346-48 (Tex. App.—El Paso 2005, no pet.). Wibbenmeyer urges that the procedural context of these cases distinguished them from the present case, in which Wibbenmeyer's nonsuit has had the legal effect of restoring the parties to the same legal position as they were in before any litigation began. We agree with Wibbenmeyer that these cases are distinguishable.

---

[8] *Twin City Fire Ins. Co. v. Vega-Garcia*, 223 S.W.3d 762, 769-70 (Tex. App.—Dallas 2007, pet. denied); *Hagberg v. City of Pasadena*, 224 S.W.3d 477, 483-84 (Tex. App.—Houston [1st Dist.] 2007, no pet.); *American Home Assurance Co. v. McDonald*, 181 S.W.3d 767, 768 (Tex. App.—Waco 2005, no pet.); *Dean Foods Co. v. Anderson*, 178 S.W.3d 449, 455 (Tex. App.—Amarillo 2005, pet. denied); *Pacific Employers Ins. Co. v. Torres*, 174 S.W.3d 344, 346-48 (Tex. App.—El Paso 2005, no pet.).

On the other hand, although appellees do not emphasize them, a number of cases applying rule of civil procedure 131 have held that a defendant who is the beneficiary of a plaintiff's nonsuit is a "successful party" entitled to court costs. *See, e.g.*, *City of Houston v. Woods*, 138 S.W.3d 574, 581 (Tex. App.—Houston [14th Dist.] 2004, no pet.); *Reed v. State*, 78 S.W.2d 254, 256 (Tex. Civ. App.—Austin 1934, writ dism'd). However, these decisions may rest in part on the fact that rule 162, governing nonsuits, explicitly permits the taxing of court costs against the nonsuiting party, and not necessarily on the view that the other party would otherwise be "successful" as that term is ordinarily understood. *See Woods*, 138 S.W.3d at 581 (acknowledging that "no judgment 'vindicating a civil right or claim' was entered" where claims were nonsuited, observing that rule 162 authorizes taxing of costs against nonsuiting party, and concluding "[t]hus, when a plaintiff dismisses his claims against the defendant, 'the defendant is the successful party and should recover its costs under [Rule 131].") (quoting *Reed*, 78 S.W.2d at 256); *see also Doolin's Harley-Davidson, Inc.*, No. 06-05-00101-CV, 2006 Tex. App. LEXIS 116, at *10-11 (observing that "[t]he party requesting nonsuit is always responsible for court costs" under rule 162, and that "[t]he 'prevailing party' analysis is not necessary when determining who should pay court costs").

Following the lead of the Texas Supreme Court in *Intercontinental*, and as appellees urge we do, we will look to federal law for guidance as to whether appellees have been "successful" or "prevailed" in enforcing the shareholders' agreement where Wibbenmeyer dismissed his claims by nonsuit. In its seminal *Buckhannon* decision, on which the Texas Supreme Court relied in *Intercontinental*, the United States Supreme Court addressed whether a plaintiff is a "prevailing party" when a defendant, in response to the plaintiff's claims, voluntarily changes its conduct in

20

a manner mooting the controversy. *See* 532 U.S. at 600-61. A group of companies that operated nursing homes in West Virginia sued that state, two of its agencies, and various individuals in federal court seeking declaratory and injunctive relief against the enforcement of a statutory regulatory requirement they contended violated federal law. In response, the West Virginia legislature repealed the requirement, and the district court dismissed the case as moot. The plaintiffs then requested attorney's fees under the applicable federal statute. The plaintiffs relied on a "catalyst theory" that had been recognized by some federal circuits, which held that a plaintiff is a "prevailing party" if it achieves the desired result because its lawsuit brought about a voluntary change in the defendant's conduct. *See id.* at 600-02.

Drawing on Black's definition of "prevailing party" and its prior decisions, the Supreme Court held that "prevailing party" status requires obtaining relief from the court (e.g., "enforceable judgments on the merits and court-ordered consent decrees") that effect a "material alteration of the legal relationship of the parties." *See id.* at 603-05; *see also id.* at 605 (also describing the standard as requiring a "judicially sanctioned change in the legal relationship of the parties"). "A defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit," nonetheless failed to meet this standard, the Court reasoned, because it "lacks the necessary judicial *imprimatur* for the change." *See id.* at 605. The same would be true, the Court observed, for "private contractual settlements" whose terms were not incorporated into a consent decree. *See id.* at 604 n.7. Applying these standards, the Supreme Court rejected the catalyst theory and held that the plaintiffs were not "prevailing parties." *See id.* at 605.

21

Appellees assert that Wibbenmeyer's nonsuit and resignation from the TechTerra board in response to this Court's affirming the denial of temporary injunctive relief "materially altered the parties' legal relationship" within the meaning of *Intercontinental* and the federal jurisprudence it incorporates. Appellees overlook the requirement that it must be a judicial ruling, not a party's voluntary action, that effects the requisite material alteration of the parties' legal relationship. *See id.* at 604-05. Thus, lower federal courts have applied the *Buckhannon* analysis to defendants' claims for attorney's fees as "prevailing parties" and held that a plaintiff's voluntary dismissal under Fed. R. Civ. P. 41(a)(1)(i)—the federal equivalent of Texas Rule of Civil Procedure 162—does not confer "prevailing party" status on a defendant. *See RFR Indus., Inc. v. Century Steps, Inc.*, 477 F.3d 1348, 1353 (Fed. Cir. 2007). This is so because the dismissal is not "judicially sanctioned"—the dismissal requires no court order—and there is no "change in the legal relationship of the parties" because the plaintiff remains free to re-file its action, as it was before litigation began. *See id.*[9]

---

[9] On the other hand, the Fifth Circuit, among other lower federal courts, have held that a plaintiff who *obtains* preliminary injunctive relief turning on a determination of the merits, as opposed to a mere decision to preserve the status quo, may be deemed a "prevailing party" if the ruling causes the defendant to moot the action through voluntary compliance. *See Dearmore v. City of Garland*, 519 F.3d 517, 520-26 (5th Cir.), *cert. denied*, 2008 U.S. LEXIS 6325 (2008). The rationale for this holding is that the preliminary injunction is "judicially sanctioned" and "materially alters the legal relationship between the parties," thereby satisfying *Buckhannon*. *Id.* at 524 (temporary injunction "satisfied *Buckhannon* because it requires that a party obtain a judicial ruling which results in a material change in the legal relationship between the parties"). Here, the rulings of the district court and this Court concerning Wibbenmeyer's entitlement to a preliminary injunction turned largely on construction of paragraph 9 of the shareholders' agreement, an issue that overlaps with the ultimate merits of his claims. In fact, as appellees emphasize, Wibbenmeyer admits in his opening brief that he nonsuited after "[s]eeing the writing on the wall"

22

Wibbenmeyer's notice of nonsuit, as previously explained, returned the parties to the identical legal position with respect to their rights under paragraph 9 of the shareholders' agreement as they were before Wibbenmeyer filed his claims. Likewise, Wibbenmeyer's nonsuit of his claims was not "judicially sanctioned"—he merely filed a notice, and appellees did not obtain an order of dismissal or nonsuit. Consequently, under the concepts of "prevailing party" applied by the Texas Supreme Court in *Intercontinental*, appellees were not "successful" or "prevailing" in enforcing the shareholders' agreement. Accordingly, they are not entitled to attorney's fees under paragraph 6 of that agreement.

In a further alternative, appellees urge that we affirm the attorney's fees award on the basis that the district court in substance or "impliedly" granted declaratory relief construing paragraph 6's attorney's fee provision, thereby invoking the district court's discretion to award attorney's fees under the UDJA. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (West 2008) ("In any proceeding under this chapter, the court may award costs and reasonable and necessary attorney's fees as are equitable and just."); *see also Barshop v. Medina County Underground Water Conservation Dist.*, 925 S.W.2d 618, 637-38 (Tex. 1996) (recognizing that courts may award attorney's fees to a non-prevailing party under the UDJA).[10] Appellees emphasize that they pled

---

in our opinion. Nonetheless, whatever the practical effects of these rulings may have been in influencing Wibbenmeyer's behavior, it remains that appellees did not obtain a *judicial ruling* that altered the parties' legal relationship, as explained above. This is fatal to Wibbenmeyer's attorney's fee claim under paragraph 6 of the shareholders' agreement.

[10] In the context of their arguments addressed to Wibbenmeyer's second issue, concerning whether appellees' attorney's fee claim survived his nonsuit, appellees urge that "attorney's fees as a sanction is wholly appropriate in this case." To the extent appellees are arguing that the

23

a claim for attorney's fees under paragraph 6 and that Wibbenmeyer joined issue by filing a supplemental answer disputing whether appellees had "successfully enforce[d]" the shareholders' agreement. They reason that both pleadings "invoked the equitable power of the trial court under the UDJA to establish the rights of the parties . . . thus allowing for a fee award." Even if the record reflects that the parties invoked the UDJA and the district court's judgment (which contains no declarations) could be construed as granting declaratory relief, we would hold that attorney's fees cannot be awarded under the UDJA under the present circumstances.

Appellees' theory boils down to an assertion that even though they otherwise have no statutory or contractual basis for recovering attorney's fees, they can nonetheless recover the fees under the UDJA because they have obtained an "implied" declaration as to their statutory or contractual basis for attorney's fees. This somewhat circular rationale runs afoul of "the rule . . . that a party cannot use the [UDJA] as a vehicle to obtain otherwise impermissible attorney's fees." *MBM Fin. Corp.*, 292 S.W.3d at 669; *see also id.* (explaining that "[i]f repleading a claim as a declaratory judgment could justify a fee award, attorney's fees would be available for all parties in all cases. That would repeal not only the American Rule but also the limits imposed on fee awards in other statutes."). Consequently, assuming that the district court "impliedly" awarded declaratory relief concerning paragraph 6's attorney's fee provision, the UDJA would not be a basis for recovering the fees awarded in the judgment.

---

attorney's fees award can be affirmed as sanctions, the district court's findings of fact and conclusions of law reflect that it awarded fees based solely on chapter 38 and the shareholders' agreement, and there are no findings that would support a sanctions award.

Because there is no legal basis for awarding appellees attorney's fees in this case, we sustain Wibbenmeyer's first issue, reverse the district court's judgment awarding appellees attorney's fees, and render judgment that appellees take nothing on that claim. Given this holding, we need not reach Wibbenmeyer's second and third issues. *See* Tex. R. App. P. 47.1.

_____

Bob Pemberton, Justice

Before Justices Patterson, Puryear and Pemberton;
   Dissenting Opinion by Justice Puryear

Reversed and Rendered

Filed: March 26, 2010

25