## REED et al. v. STATE.

No. 8025.

Court of Civil Appeals of Texas. Austin.

Dec. 5, 1934.

Rehearing Denied Jan. 9, 1935.

Dan Moody and Geo. E. Shelley, both of Austin, for appellants W. T. Caswell and M. H. Reed.

Jas. V. Allred, Atty. Gen., and F. O. McKinsey, Asst. Atty. Gen., for the State.

Ben H. Powell, of Austin, in pro per.

H. S. Garrett, of Fort Worth, amicus curiæ.

BAUGH, Justice.

Appeal is from an order of the district court dismissing, upon motion of the state, the case of State v. Bradford et al., after same had been reversed on former appeals. Extensive consideration of the issues presented, with full discussion of the interests claimed by the various parties to the litigation, will be found in the opinion of this court in 25 S.W.(2d) 706, and that of the Supreme Court in 121 Tex. 515, 50 S.W.(2d) 1065. The appeal here prosecuted is by the defendants Reed and Caswell, and the only issue made is that the trial court improperly taxed costs, aggregating $22,120, against them, being the amount of costs theretofore paid by them during the progress of said litigation. The unpaid costs, aggregating some $5,000, were taxed against the state, and by cross-assignments the state complains of this action of the trial court, insisting that no costs can be properly taxed against the state.

Though fully discussed in the appeals above referred to, a brief history of the litigation will aid in the disposition of the issues here presented. The case arose as the result of the discovery of oil in the areas involved, being the river bed of the north fork of Red river in Gray and Wheeler counties. The lands involved were occupied by numerous landowners, holding same under patents from the state, whose lines crossed the river bed. Upon the theory that said river was a navigable stream under the Constitution and statutes, and that the patents to the area comprising said river bed were void, and that said area still belonged to the state, Reed and Caswell filed with the land commissioner applications for mineral permits on said river bed area. These were refused by the land commissioner. The Attorney General was thereafter induced to file suit against the numerous claimants of said lands to recover for the state the river bed area. To this suit Reed and Caswell were also made parties defendant, as claiming some interest therein. This suit necessitated a survey of said river bed across two counties to ascertain whether in fact it were a navigable stream. These costs were advanced by Reed and Caswell because of their interest in the matter. While parties defendant, it is obvious that the claims of Reed and Caswell were adverse to the rights of all other landowner defendants, some 500 in number, and Reed and Caswell filed cross-actions against such other defendants. Manifestly their right of recovery depended entirely upon whether the state recovered from the other defendants title to the river bed area. Consequently they made common cause with the state in the real controversy, and, as to the other defendants, they in effect be-

came coplaintiffs with the state. They also prosecuted a common appeal with the state and made the same contentions as did the state on the former appeals of this case.

While said suit was pending, and before the trial thereof, the Legislature enacted what is commonly known as the Small River Bed Bill (Acts 1929, 41st Leg. p. 298, c. 138 [Vernon's Ann. Civ. St. art. 5414a]), which effectually disposed of the principal subject-matter of the suit, and the validity of which act was sustained by this court and by the Supreme Court on the former appeals of this case above referred to. The Supreme Court held, however, that the state, in case said stream were found to be navigable, still retained its rights to the sand and gravel therein, and control over the water rights thereof, and reversed and remanded the case to the trial court. The Attorney General, on behalf of the state, having obviously concluded that the issues remaining in the case were not of sufficient importance to the state to further prosecute the suit, moved the trial court to dismiss it, which motion was granted, and the costs taxed as above indicated. The defendants Reed and Caswell, having had the interests claimed by them, i. e., the minerals beneath said river bed, effectively disposed of by legislative act, had no further interest in the suit except to recover the costs expended by them.

■ It is their contention here that the state, being the only plaintiff, having voluntarily dismissed its suit, thereby became the losing party, and the defendants the successful parties within the purview of article 2056, R. S., and that therefore all costs in the trial court should be taxed against the state. It may be conceded that as between plaintiff and defendants generally, where plaintiff dismisses his asserted cause of action, the defendant is the successful party and should recover his costs under article 2056, R. S. Bruce v. Knodell (Tex. Civ. App.) 103 S. W. 433. But the trial court may for good cause stated on the record otherwise tax costs. Article 2066, R. S. What constitutes good cause is not defined by the statute, and obviously could not be defined. It necessarily rests in the sound discretion of the trial court, and, unless abused, that discretion will not be disturbed on appeal.

■■ While Reed and Caswell were made parties defendant, this suit was obviously filed by the state at their instance and request. Their purpose and undertaking was to enable the state to recover the minerals underneath the river bed, and to themselves

then establish their claim to seven-eighths of said minerals as against all other defendant landowners. Had they succeeded, they would have been the principal beneficiaries of the suit. The Supreme Court, however, decided theirs was not a prior claim to said minerals, and the Small Bill effectually destroyed their claims. The successful parties to said suit were therefore the defendant landowners residing on the ground, and whose interests were as much adverse to the claims of Reed and Caswell as they were to those of the state. Upon the chance of recovering valuable mineral rights, Reed and Caswell advanced the costs taxed against them in order to enable the state to prosecute the suit brought in its name. Under no view of the case do we think it can be said that Reed and Caswell were successful parties to the litigation. They would have been in no better position had the state prosecuted the suit to a final judgment in accordance with the opinion of the Supreme Court. The record discloses affirmatively that the costs taxed against them were advanced by them "by reason of their interests in the matter." Certainly they lost those "interests," and the trial court was authorized to tax against them as losing parties the amount of those costs, and did not abuse his discretion in so doing. And, whether authorized under article 2056 to so tax those costs, we think the recitals of fact in the judgment of the trial court setting out in substance the facts above stated constituted a sufficient compliance with the provisions of article 2066, R. S., to sustain the judgment taxing said costs against appellants under said article of the statute. We think, however, that the court was authorized to tax said costs against appellants as losing parties to the litigation under article 2056.

■ The unpaid costs in said case were taxed against the state. No contention is made that such costs are unreasonable nor that they were not authorized. The Attorney General by cross-assignment contends, however, that no authority exists in law for taxing costs against the state, whether it be plaintiff or defendant, or whether it be successful or not. That seems to be the conclusion reached by the El Paso Court of Civil Appeals in Pope v. State, 56 S.W.(2d) 492, following the general rule announced in 59 C. J. 332, and 25 R. C. L. 418. It has been the uniform custom, however, where the state has been a proper party to a suit, to tax costs against it as against any other litigant. Necessarily, payment thereof must

await appropriations of funds for that purpose by the Legislature, but such appropriations have habitually been made by each Legislature for many years. The right and propriety of taxing such costs against the state as a party litigant is, we think, conclusively foreclosed by the Supreme Court in Houtchens v. State, 74 S.W.(2d) 976; that being an opinion on motion to tax the costs against the state and the only issue there presented.

█ The general rule is that, when the state enters the courts as a litigant, it places itself on the same basis as any other litigant. While granted immunities not available to litigants generally, e. g., the right to be sued only with its consent, not required to give bond, freedom from execution against it, etc., with the ever-increasing number of suits to which the state is a party, frequently upon its own initiative, it would be a harsh rule to say that the officers of the court should be compelled to render to the state without compensation indispensable services, no matter how onerous they might be. It is not necessary to enumerate instances where such hardships would occur should the state not be liable for costs in litigation brought by it where it is the losing party; but service of process on nonresident defendants, reporters' fees in preparing records on appeal, and clerk's fees allowed by law afford obvious instances.

Finding no error in the record, the judgment of the trial court is affirmed.

Affirmed.