TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-09-00122-CV






Carl T. Wibbenmeyer, Appellant


v.


TechTerra Communications, Inc.; Christian Behier; and Adella Almazan-Seabolt,
Appellees






FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 368TH JUDICIAL DISTRICT

NO. 06-881-C368, HONORABLE BURT CARNES, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N


 Appellant Carl T. Wibbenmeyer appeals a district court judgment that awarded
appellees TechTerra Communications, Inc.; Christian Behier; and Adella Almazan-Seabolt
attorney's fees but no other relief. Wibbenmeyer argues that there is no statutory or contractual basis
for awarding attorney's fees and that, if there was, the amount awarded was an abuse of discretion. 
We agree that there was no statutory or contractual basis for awarding attorney's fees. Consequently,
we will reverse and render judgment that appellees take nothing on their attorney's fee claim.


BACKGROUND

 The facts underlying this appeal are detailed in Wibbenmeyer v. Techterra
Communications, Inc., No. 03-07-00038-CV, 2008 Tex. App. LEXIS 2628, at *1-6
(Tex. App.--Austin 2008, no pet.). To summarize, Wibbenmeyer, Behier and Almazan-Seabolt
were the co-founders, principal shareholders, and directors of TechTerra Communications, Inc.
TechTerra's bylaws provided that the corporation would have three directors elected annually by
the shareholders. The bylaws permitted amendments by the vote of shareholders owning more than
sixty percent of the corporation's outstanding shares and specifically provided that the number of
directors could be increased or decreased by amendment, provided no decrease would have the effect
of shortening the term of any incumbent director. The bylaws further provided that an individual
director could be removed from office "only with good cause through judicial declaration."

 Behier, Almazan-Seabolt, and Wibbenmeyer were also signatories to a shareholders'
agreement. The agreement's recitals reflected that these individuals owned the entirety of
TechTerra's issued and outstanding shares. Paragraph 9 of the shareholders' agreement provided: 


 For so long as the Board of Directors consists of three or more members, the parties
to this Agreement agree to vote all of their shares for the election of directors as
follows: one nominee of Christian Behier, one nominee of Adella Almazan, and one
nominee of Carl T. Wibbenmeyer.



 Relations between Wibbenmeyer and the other principal shareholders eventually
soured. Litigation began when Wibbenmeyer filed a petition for mandamus to compel access
to corporate records. The other principal shareholders began taking steps that would enable them
to remove Wibbenmeyer as a director. After unsuccessfully moving to remove Wibbenmeyer as a
director, (1) Behier called a special meeting of the shareholders with the stated purpose "to amend
the Corporation's Bylaws to reduce the number of directors, revise the effect of the reduction in
the number of directors and to change the provisions for removing directors." Wibbenmeyer
responded by filing a supplemental petition asserting causes of action for breach of the shareholders'
agreement and tortious interference with it. He alleged that appellees' actions threatened his rights
under paragraph 9 of the shareholders' agreement "by which Christian Behier and Adelia Almazan-Seabolt are obligated to vote for the nominee of Plaintiff for Director." Wibbenmeyer sought only
injunctive relief, attorney's fees, and interest on the fees. He requested a temporary restraining order,
temporary injunction, and permanent injunction to restrain the other shareholders from holding
the meeting or amending the bylaws to reduce the number of directors or change the requirements
for removing directors.

 The district court granted a temporary restraining order that barred
appellees from removing any current TechTerra directors but did not prohibit them from holding
the shareholders' meeting or changing the bylaws. The shareholders' meeting went forward as
scheduled. Wibbenmeyer did not attend. The other shareholders amended the bylaws by reducing
the number of directors to a minimum of two, deleting the requirement of a judicial declaration
of good cause to remove a director, and permitting shareholders or directors to vote to remove
a director.

 Appellees filed a response to Wibbenmeyer's application for injunctive relief. They
asserted that Wibbenmeyer had failed to demonstrate a viable cause of action because he
had not alleged "any activity that has violated or would breach either the bylaws or shareholders'
agreement," nor a probable right to recover because he was "complaining of activities that are . . .
permitted by TechTerra's governing documents." Appellees prayed that the district court deny
Wibbenmeyer's application. They also prayed for attorney's fees without pleading a statutory or
contractual basis for such an award.

 The parties joined issue as to whether the shareholder agreement prevented
appellees from reducing the number of directors below three and avoiding their obligations under
paragraph 9 of the agreement to elect a nominee of Wibbenmeyer as one of the corporation's
three directors. Appellees argued that the first clause of paragraph 9--"For so long as the Board of
Directors consists of three or more members . . ."--was a condition precedent to the obligations set
forth in the succeeding portions of the paragraph and that nothing in the shareholders' agreement
prohibited them from reducing the number of directors. Wibbenmeyer replied that the first clause
of paragraph 9 should instead be construed as a covenant requiring that the signatories maintain
three directors, such that appellees could not avoid their obligations in paragraph 9 by reducing the
number of directors.

 Following a hearing, the district court denied both the temporary injunction and
mandamus and subsequently entered findings of fact and conclusions of law. Among other findings,
the district court found that Wibbenmeyer was unlikely to prevail on either his breach-of-contract
or tortious interference claim and that "[t]he shareholder agreement makes no provision requiring
the parties to vote their shares in the election of directors in any particular way if the Techterra Board
of Directors consists of less than three directors."

 Wibbenmeyer appealed the denial of the temporary injunction to this Court. See
Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(4) (West 2008). We temporarily enjoined
appellees "from taking any action removing Carl T. Wibbenmeyer from the Board of
TechTerra Communications, Inc.," pending consideration of the appeal. While that appeal was
pending, appellees filed an original counterclaim in the district court seeking declarations under the
Uniform Declaratory Judgments Act (UDJA). (2) Appellees also pled what they termed a common-law
cause of action for "contract construction." (3) Appellees further pled that they were entitled to
attorney's fees under both causes of action. Subsequently, appellees filed a motion for sanctions
against Wibbenmeyer under rule 13 of the Texas Rules of Civil Procedure and chapter 10 of the
civil practice and remedies code.

 This Court later affirmed the district court's denial of the temporary injunction. See
Wibbenmeyer, No. 03-07-00038-CV, 2008 Tex. App. LEXIS 2628, at *17. Central to our analysis,
we construed paragraph 9 of the shareholders' agreement and concluded that "For so long as the
Board of Directors consists of three or more members . . ." was a condition on the application of
the paragraph's voting requirements, as appellees had urged, not a covenant to vote for at least
three directors, as Wibbenmeyer had maintained. Id. at *16-17. Consequently, we held that the
district court had not abused its discretion in determining that Wibbenmeyer was unlikely to prevail
on his breach-of-contract claim. Id. We likewise held that the district court had not abused its
discretion in finding Wibbenmeyer unlikely to prevail on his tortious interference claim where the
sole interference Wibbenmeyer had alleged was that of two fellow signatories to the contract. Id.
at *8-9. In conclusion, we emphasized that "[w]e are reviewing only the trial court's decision not
to enter a temporary injunction" and that our "opinion is not to be interpreted as a comment on the
merits of the underlying cause of action beyond that required by the standard of review." Id. at *17. 
 A few days after we issued our opinion in the interlocutory appeal, Wibbenmeyer
filed a "Notice of Nonsuit With Prejudice for All His Causes of Action." The notice represented
that following this Court's opinion in his interlocutory appeal, Wibbenmeyer had resigned as a
director of TechTerra, that his resignation had been accepted and, for these reasons, his "causes of
action in this case, and the remedies sought by [him], are not longer in issue or dispute."

 Approximately two weeks thereafter, appellees filed a first amended counterclaim.
In this pleading, appellees nonsuited their causes of action under the UDJA and for "contract
construction" by omitting them and instead pled claims solely for attorney's fees under chapter 38
of the civil practice and remedies code, see Tex. Civ. Prac. & Rem. Code Ann. § 38.001
(West 2008), and an attorney's fee provision in the shareholders' agreement.

 The parties subsequently tried appellees' attorney's fee claims to the district court. 
The court ultimately rendered judgment awarding appellees $84,623.67 in attorney's fees through
trial plus a total of $32,500 in contingent post-judgment and appellate attorney's fees. The judgment
awarded no other relief. The district court subsequently entered findings of fact and conclusions
of law. This appeal followed.


ANALYSIS

 Wibbenmeyer brings three issues in this appeal. In his first issue, Wibbenmeyer
argues that no statutory or contractual provision supports appellees' attorney's fee award. In his
second issue, Wibbenmeyer asserts that none of appellees' counterclaims pending at the time of
his nonsuit survived the nonsuit and thus could not be "amended" thereafter. In his third issue,
Wibbenmeyer challenges the amount of attorney's fees the district court awarded. We need only
address the first issue.

 "Texas has long followed the 'American Rule' prohibiting [attorney's] fee awards
unless specifically provided by contract or statute." MBM Fin. Corp. v. The Woodlands Operating
Co., 292 S.W.3d 660, 669 (Tex. 2009) (citing Tony Gullo Motors I, L.P. v. Chapa, 212 S.W.3d
299, 310-11 (Tex. 2006)). Issues concerning the availability of attorney's fees under statute or
contract present questions of law that we review de novo. See Holland v. Wal-Mart Stores, Inc.,
1 S.W.3d 91, 94 (Tex. 1999); In re Lesikar, 285 S.W.3d 577, 583 (Tex. App.--Houston [14th Dist.]
2009, no pet.).

 In their live pleadings, the sole bases appellees pled for recovering attorney's fees
were chapter 38 of the civil practice and remedies code and an attorney's fee provision in the
shareholders' agreement. These were also the sole grounds for awarding attorney's fees that the
district court identified in its findings of fact and conclusions of law.

 Chapter 38 is not a basis for recovering attorney's fees in this case because
appellees did not assert a claim for breach of contract, did not prevail on one, and did not
recover damages. MBM Fin. Corp., 292 S.W.3d at 666 ("To recover fees under [chapter 38], a
litigant must do two things: (1) prevail on a breach of contract claim, and (2) recover damages. The
second requirement is implied from the statute's language: for a fee recovery to be 'in addition to
the amount of a valid claim,' the claimant must recover some amount on that claim."); see Tex. Civ.
Prac. & Rem. Code Ann. § 38.001 ("A person may recover reasonable attorney's fees from
an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for
. . . an oral or written contract.").

 As for whether attorney's fees were authorized under the shareholder agreement,
this question turns on construction of that agreement. See Intercontinental Group P'ship v.
KB Home Lone Star L.P., 295 S.W.3d 650, 635 (Tex. 2009) ("Parties are free to contract for a fee-recovery standard either looser or stricter than Chapter 38's."). Contract terms are given their plain,
ordinary, and generally accepted meanings unless the contract itself shows them to be used in a
technical or different sense. Valence Operating Co. v. Dorsett, 164 S.W.3d 656, 662 (Tex. 2005). 
We must construe the contract as a whole "in an effort to harmonize and give effect to all the
provisions of the contract so that none will be rendered meaningless." Id. "No single provision
taken alone will be given controlling effect; rather, all the provisions must be considered with
reference to the whole instrument." Shell Oil Co. v. Khan, 138 S.W.3d 288, 292 (Tex. 2004). 
Further, in determining the meaning of contract terms, we may also consider the context of the
circumstances existing at the time the contract was executed and the particular business activity
sought to be served. See Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd., 940 S.W.2d 587,
589 (Tex. 1996); Reilly v. Rangers Mgmt., Inc., 727 S.W.2d 527, 530 (Tex. 1987). 

 If we can give the contract a definite or certain legal meaning, it is unambiguous
and we construe it as a matter of law. Willis v. Donnelly, 199 S.W.3d 262, 275 (Tex. 2006);
J.M. Davidson, Inc. v. Webster, 128 S.W.3d 223, 229 (Tex. 2003). If, on the other hand, the contract
is subject to two or more reasonable interpretations, it is ambiguous, which creates a fact issue as
to the parties' intent. Columbia Gas Transmission Corp., 940 S.W.2d at 589. Whether a contract
is ambiguous is a question of law. Id. Neither party has asserted that the attorney's fee provision
at issue here is ambiguous and, as explained below, we conclude it is not. (4)

 Paragraph 6 of the shareholders' agreement provides: 


This Agreement shall be binding upon and enure to the benefit of the parties hereto,
their representative heirs, successors, and assigns, is performable in Travis County,
Texas and shall be governed by the laws of the State of Texas. This Agreement
embodies the entire agreement of the parties with respect to the matters addressed
hereby. This Agreement may be enforced by specific enforcement. Any party that
successfully enforces this agreement in a court of law or equity shall be entitled to
its attorney and expert witness fees.



(Emphasis added.) Appellees rely on paragraph six's final sentence, italicized above, as a basis
for recovering attorney's fees. Agreeing that appellees could recover fees under paragraph 6,
the district court concluded as a matter of law that appellees "were prevailing parties because
they successfully enforced the shareholders' agreement, and, therefore, are entitled to an award of
attorney and expert witness fees pursuant to the shareholders' agreement."

 On appeal, the parties join issue as to whether appellees "successfully enforce[d]"
the shareholders' agreement "in a court of law or equity." Wibbenmeyer focuses on the meaning
of "enforce." Citing cases that have addressed the meaning of the term, Wibbenmeyer contends
that "enforce" means "to cause to be executed or performed; to cause to take effect; to compel
obedience to; to put into force," Dozier v. City of Gatesville, 51 S.W.2d 1091, 1094 (Tex. Civ.
App.--Waco 1932, no writ), "the act of putting something such as law into effect; the execution of
a law; the carrying out of a mandate or command," Siskin Enters., Inc. v. W.B. Stoddard, Jr., Inc.,
147 F. Supp. 2d 1126, 1128 (D. Utah 2001) (citing Black's Law Dictionary 528 (6th ed. 1991)),
and "mandat[ing] compliance with existing contractual obligations," id. at 1129 (further holding
that "[a] suit to validate or clarify rights does not constitute an action to enforce such rights."). These
definitions, in Wibbenmeyer's view, denote "some offensive success that Appellees did not
pursue or achieve." (5)

 Appellees, Wibbenmeyer urges, obtained no offensive success causing the
shareholders' agreement to be executed or performed or mandating compliance with it, but
only defended against his claims. And if any right was "enforced" by appellees in the litigation,
Wibbenmeyer adds, it was their rights under the bylaws to reduce the number of directors below
three, not any rights they possessed under the shareholders' agreement. It was not enough that "[t]he
proceedings may have ultimately vindicated Appellees' interpretation of the parties' rights,"
Wibbenmeyer reasons, because "they cannot be construed as an enforcement action that would allow
them to recover fees under the plain language of the fee provision."

 In response, appellees assert that "successfully enforces" is synonymous with
"prevailing party" as understood in attorney's fee jurisprudence and that they "prevailed as a
matter of law" when Wibbenmeyer nonsuited his claims. Appellees "completely concur"
with Wibbenmeyer "as to the meaning of 'enforce' in Black's Law Dictionary and in both
Texas and Federal case law," citing additional authorities in support of that view. See Sheppard
v. Thomas, 101 S.W.3d 577, 582 (Tex. App.--Houston [1st Dist.] 2003, pet. denied) ("When used
as a verb, 'enforce' means 'to give force or effect to (a law, etc); to compel obedience to.") (citing
Black's Law Dictionary 549 (7th ed. 1999)); Black's Law Dictionary 528 (6th ed. 1990) ("to put into
execution; to cause to take effect; to make effective; as, to enforce a particular law, a writ, a
judgment, or the collection of a debt or fine; to compel obedience to"). However, they urge that
these definitions are synonymous, or nearly so, with the definitions of "prevail" and "successful
party." See id. at 1188 (defining "prevail" as "to be or become effective or effectual, to be in force,
to obtain; . . . to succeed; to win"), 1430 ("successful party" is "one who obtains judgment of
competent court vindicating civil claim of right . . . . See also Prevailing Party."). Based on
the proposition that "successfully enforces" means "prevailing party," appellees rely on the
Texas Supreme Court's recent analysis of a contractual "prevailing party" attorney's fee provision
in Intercontinental Group Partnership v. KB Home Lone Star L.P., 295 S.W.3d 650, and several
court of appeals opinions that have addressed worker's compensation claimants' entitlement to
attorney's fees under labor code section 408.221(c) after carriers nonsuit their suits for
judicial review from an adverse appeals panel ruling. In reply, Wibbenmeyer argues that even if
"successfully enforces" is synonymous with "prevailing party," appellees did not "prevail" because
none of the parties' claims for affirmative relief (apart from attorney's fees) proceeded to final
judgment but were both voluntarily nonsuited. See Cigna Ins. Co. of Tex. v. Middleton, 63 S.W.3d
901, 903 (Tex. App.--Eastland 1999, pet. denied) (no "prevailing party" under labor code section
408.221(c) where both the workers' compensation carrier and the claimant nonsuited their claims).

 We begin our analysis of paragraph 6's attorney's fee provision with
three observations regarding its text. First, the provision required appellees to prove they
"successfully enforce[d] [the shareholders'] agreement in a court of law or equity." Appellees assert
that "successfully" incorporates the concept of "prevailing party" as understood in attorney's fees
jurisprudence, and the parties presents no reason for us to think otherwise. Black's Law Dictionary
equates "prevailing party" with "successful party," as appellees observe. See Black's Law Dictionary
1145 (7th ed. 1999) ("prevailing party" is "[a] party in whose favor a judgment is rendered,
regardless of the amount of damages awarded . . . Also termed successful party."). Moreover,
Texas courts have construed the terms similarly. For example, Rule of Civil Procedure 131 awards
court costs to "[t]he successful party in a suit," and "successful party" has been held to mean "one
who obtains judgment of a competent court vindicating a civil right or claim," see, e.g., City of
Houston v. Woods, 138 S.W.3d 574, 581 (Tex. App.--Houston [14th Dist.] 2004, no pet.), while
"prevailing party" has been held to mean the party that either successfully prosecutes the action
or defends against it on the merits, "prevailing on the main issue" or being "vindicated by the
judgment rendered." See Indian Beach Prop. Owners' Ass'n v. Linden, 222 S.W.3d 682, 696-97
(Tex. App.--Houston 2007, no pet.); Jakab v. Gran Villa Townhouses Homeowners Ass'n, Inc.,
149 S.W.3d 863, 867 (Tex. App.--Dallas 2004, no pet.); City of Amarillo v. Glick, 991 S.W.2d 14,
17 (Tex. App.--Amarillo 1997, pet. denied); see also Dear v. City of Irving, 902 S.W.2d 731,
739 (Tex. App.--Austin 1995, writ denied) (equating "successful party" under rule 131 with
"prevailing party"). 

 As appellees point out, the Texas Supreme Court has recently refined the "prevailing
party" analysis by applying federal jurisprudence when construing a "prevailing party" contractual
attorney's fee provision that, like the one here, did not define the term. Intercontinental Group
P'ship, 245 S.W.3d at 652, 653. In Intercontinental, the plaintiff sued the defendant for breach of
contract. A jury found that the defendant had breached the contract but awarded no damages. The
trial court rendered judgment awarding the plaintiff only attorney's fees on the contract claim and
no other monetary, equitable, or declaratory relief. For guidance as to the "ordinary meaning" of
"prevailing party," the court looked to the United States Supreme Court's federal jurisprudence
construing that term as it is used in federal statutes. Id. at *6. 

 As the Texas Supreme Court noted, the touchstone of the "prevailing party" inquiry
under federal law is whether there has been "judicially sanctioned" "relief on the merits"--such as
a judgment or "comparable relief through a consent decree or settlement"--that "materially alters
the legal relationship between the parties." Id. at * 6-9 (quoting Farrar v. Hobby, 506 U.S. 103, 111-12 (1992)); see also Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health
and Human Resources, Inc., 532 U.S. 598, 603-05 (2001). Under this standard, the Texas Supreme
Court further emphasized, "the judgment," not preliminary rulings or findings, "is critical to the
prevailing-party determination." Intercontinental Group Partnership, 245 S.W.3d at 656 (citing
Buckhannon, 532 U.S. at 603-04). Applying these principles, the supreme court concluded that the
plaintiff was not the "prevailing party":


It seems beyond serious dispute that KB Home [the plaintiff] achieved no
genuine success on its contract claim. Whether a party prevails turns on whether
the party prevails upon the court to award it something, either monetary or equitable. 
KB Home got nothing except a jury finding that Intercontinental [the defendant]
violated the contract. It recovered no damages; it secured no declaratory or
injunctive relief; it obtained no consent decree or settlement in its favor; it received
nothing of value of any kind . . . . Nor do we perceive any manner in which the
outcome materially altered the legal relationship between KB Home and
Intercontinental. Before the lawsuit, Intercontinental was selling lots that were
promised to KB Home. After the lawsuit, Intercontinental had sold the promised lots
and was not required to pay a single dollar in damages or do anything else it
otherwise would not have done. . . . A stand-alone finding on breach confers no
benefit whatsoever.



Id. at *10-11. In sum, appellees must have been "successful" or "prevailed" under this standard to
recover attorney's fees under paragraph 6 of the shareholders' agreement.

 Our second observation concerning the text of the shareholders' agreement's
attorney's fees provision is that it requires appellees to prove they "successfully enforce[d]" (or
"prevailed" in enforcing) "[the shareholders'] agreement in a court of law or equity." The ordinary
meaning of "enforce," the parties agree, denotes putting something (here, the shareholders'
agreement) into execution, causing it to take effect or be effective, or compelling obedience to it.
"Enforce" thus denotes some form of affirmative action in regard to one's rights under the
shareholders' agreement, and is somewhat narrower than the act of merely obtaining a declaration
as to one's rights under the agreement. See Siskin Enters., Inc., 147 F. Supp. 2d at 1129; cf.
Intercontinental Group P'ship, 295 S.W.3d at 652 (contractual provision awarding attorney's fees
to "prevailing party" in "an action to enforce the terms of this Contract or to declare rights
hereunder"); Probus Props. v. Kirby, 200 S.W.3d 258, 265 (Tex. App.--Dallas 2006, pet. denied)
(lease awarded attorney's fees to "prevailing party" "if, due to any breach or default, it becomes
necessary for one of the parties to retain an attorney to 'enforce or defend any of its rights or
remedies hereunder'"). 

 Third, it is not enough that appellees prove they were "successful" or "prevailed" in
litigation through which Wibbenmeyer sought to enforce the shareholders' agreement. Instead, the
provision explicitly requires that appellees succeed or prevail in enforcing the shareholders'
agreement, not merely in thwarting Wibbenmeyer's attempt to do so. Cf. Intercontinental Group
P'ship, 295 S.W.3d at 652 (contract awarded attorney's fees to "prevailing party" in "an action to
enforce the terms of this Contract or to declare rights hereunder"); Alan Reuber Chevrolet, Inc.
v. Grady Chevrolet, Ltd., 287 S.W.3d 877, 881 (Tex. App.--Dallas 2009, no pet.) (contract
provided, "In the event of any litigation between the Parties hereto to enforce any provisions or
rights hereunder, the unsuccessful party to such litigation shall pay [attorney's fees] to the successful
party."); Probus Props., 200 S.W.3d at 265 (awarding fees to "prevailing party" in the event "it
becomes necessary for one of the parties to retain an attorney to 'enforce or defend any of its rights
or remedies hereunder'"). 

 We now examine the record to determine whether, in light of the foregoing
observations, it supports the district court's legal conclusion that appellees "successfully enforced
the shareholders' agreement, and, therefore, are entitled to an award of attorney and expert witness
fees pursuant to the shareholders' agreement." Wibbenmeyer asserts that appellees could not have
"enforced" the shareholders' agreement because they sought only to effectuate their right under
the corporate bylaws to change the number of directors, and not any right they possessed under
the shareholders' agreement. We disagree to the extent that, in the underlying litigation, appellees
sought to "enforce" under the ordinary meaning of that term (i.e., give force or effect to, effectuate)
what they asserted was a condition precedent stated in the agreement--"For so long as the Board
of Directors consists of three or more members . . ."--to the shareholders' obligations under
paragraph 9 to vote for one director nominee each from Behier, Almazan-Seabolt, and
Wibbenmeyer. See, e.g., Comsys Info. Tech. Serv., Inc. v. Twin City Fire Ins. Co., 130 S.W.3d 181,
192 (Tex. App.--Houston [14th Dist.] 2003, pet. denied) (parties dispute whether a condition
precedent to insurance coverage can be "enforced"). Although appellees ultimately did not seek or
obtain relief on any affirmative claims to enforce this asserted condition, they nonetheless sought
to effectuate it as essentially an affirmative defense to Wibbenmeyers' claims seeking injunctive
relief to enforce his rights under paragraph 9.

 However, even if "enforcing" the shareholders' agreement in this manner was
appellees' litigation goal, paragraph 6 of the agreement required that they also have been
"successful" or "prevailed" in pursuing this goal. As Wibbenmeyer emphasizes, and appellees
acknowledge, Wibbenmeyer's claims were terminated by his voluntary nonsuit and not by a
judgment on the merits. As noted, the district court's final judgment awarded only attorney's fees
to appellees and no other relief. Neither the judgment nor any prior rulings of the district court
purported to dispose of Wibbenmeyer's claims on the merits. The court's sole rulings in relation to
the claims were its temporary restraining order and subsequent denial of Wibbenmeyer's request for
a temporary injunction, which had the legal effect of determining only whether the court would
preserve the status quo pending the court's disposition of Wibbenmeyer's claims on the merits. See
Wibbenmeyer, 2008 Tex. App. LEXIS 2628, at *17. That issue was mooted, along with the
controversy underlying Wibbenmeyer's claims, at the moment Wibbenmeyer filed his notice of
nonsuit. See University of Tex. Med. Branch at Galveston v. Estate of Blackmon, 195 S.W.3d 98,
100 (Tex. 2006) (per curiam).

 Further, because Wibbenmeyer's nonsuit is not a ruling on the merits, it has no
res judicata effect. Citizens Ins. Co. of Am. v. Daccach, 217 S.W.3d 430, 449 (Tex. 2007). (6) Thus,
with respect to the contractual rights that were the basis of Wibbenmeyer's claims and appellees'
defenses to those claims, the nonsuit's effect was to return the parties to the identical legal position
they were in before Wibbenmeyer filed suit. See Crofts v. Court of Civil Appeals, 362 S.W.2d 101,
104 (Tex. 1962). In short, there is no final judgment or order in this case that has effected a change
in the parties' legal positions with respect to their rights under paragraph 9 of the shareholders'
agreement, including the asserted condition precedent that appellees sought to enforce. (7)

 Wibbenmeyer argues that because appellees never obtained a final judgment on
the merits of his claims, appellees cannot be "successful" or "prevailing" in enforcing any rights
under the shareholders' agreement. See Cricket Comm., Inc. v. Trillium Indus., Inc., 235 S.W.3d
298, (Tex. App.--Dallas 2007, no pet.) (neither plaintiff nor defendant was "prevailing party" where
plaintiff had nonsuited claim); Doolin's Harley-Davidson, Inc. v. Young, No. 06-05-00101-CV,
2006 Tex. App. LEXIS 116, at *10-11 (Tex. App.--Texarkana 2006, no pet.) (defendant was not
"prevailing party" because plaintiff's nonsuit was "a termination of the pleaded causes of action
and asserted defenses without an adjudication of their merits that returns the litigants to the positions
they occupied before the plaintiff invoked the court's jurisdiction"); see also Cigna, 63 S.W.3d
at 903 (workers' compensation claimant was not "prevailing party" entitled to attorney's fees
under labor code section 408.221(c) where both parties nonsuited in a suit for judicial review of
the claimant's administrative benefits determination). Appellees counter by relying on a line of
cases involving suits for judicial review brought by workers' compensation carriers to challenge
adverse appeals panel determinations of benefits. (8) In such cases, section 408.221(c) of the
labor code authorizes the claimant to recover attorney's fees if he or she "prevails on an issue
on which judicial review is sought by the insurance carrier." Tex. Lab. Code Ann. § 408.221(c)
(West 2006). These courts have held that where the carrier nonsuits its suit, the claimant is the
"prevailing party" for purposes of section 408.221(c) because the nonsuit, by returning the parties
to the same legal position they were in before the carrier filed suit, had the effect of making
the prior administrative decision in favor of the claimant final. See, e.g., Pacific Employers Ins. Co.
v. Torres, 174 S.W.3d 344, 346-48 (Tex. App.--El Paso 2005, no pet.). Wibbenmeyer urges that
the procedural context of these cases distinguished them from the present case, in which
Wibbenmeyer's nonsuit has had the legal effect of restoring the parties to the same legal position
as they were in before any litigation began. We agree with Wibbenmeyer that these cases are
distinguishable. 

 On the other hand, although appellees do not emphasize them, a number of cases
applying rule of civil procedure 131 have held that a defendant who is the beneficiary of a plaintiff's
nonsuit is a "successful party" entitled to court costs. See, e.g., City of Houston v. Woods,
138 S.W.3d 574, 581 (Tex. App.--Houston [14th Dist.] 2004, no pet.); Reed v. State, 78 S.W.2d
254, 256 (Tex. Civ. App.--Austin 1934, writ dism'd). However, these decisions may rest in part
on the fact that rule 162, governing nonsuits, explicitly permits the taxing of court costs against
the nonsuiting party, and not necessarily on the view that the other party would otherwise be
"successful" as that term is ordinarily understood. See Woods, 138 S.W.3d at 581 (acknowledging
that "no judgment 'vindicating a civil right or claim' was entered" where claims were nonsuited,
observing that rule 162 authorizes taxing of costs against nonsuiting party, and concluding "[t]hus,
when a plaintiff dismisses his claims against the defendant, 'the defendant is the successful party
and should recover its costs under [Rule 131].") (quoting Reed, 78 S.W.2d at 256); see also Doolin's
Harley-Davidson, Inc., No. 06-05-00101-CV, 2006 Tex. App. LEXIS 116, at *10-11 (observing
that "[t]he party requesting nonsuit is always responsible for court costs" under rule 162, and that
"[t]he 'prevailing party' analysis is not necessary when determining who should pay court costs"). 
 Following the lead of the Texas Supreme Court in Intercontinental, and as appellees
urge we do, we will look to federal law for guidance as to whether appellees have been "successful"
or "prevailed" in enforcing the shareholders' agreement where Wibbenmeyer dismissed his claims
by nonsuit. In its seminal Buckhannon decision, on which the Texas Supreme Court relied in
Intercontinental, the United States Supreme Court addressed whether a plaintiff is a "prevailing
party" when a defendant, in response to the plaintiff's claims, voluntarily changes its conduct in
a manner mooting the controversy. See 532 U.S. at 600-61. A group of companies that operated
nursing homes in West Virginia sued that state, two of its agencies, and various individuals
in federal court seeking declaratory and injunctive relief against the enforcement of a
statutory regulatory requirement they contended violated federal law. In response, the West Virginia
legislature repealed the requirement, and the district court dismissed the case as moot. The plaintiffs
then requested attorney's fees under the applicable federal statute. The plaintiffs relied on a
"catalyst theory" that had been recognized by some federal circuits, which held that a plaintiff is a
"prevailing party" if it achieves the desired result because its lawsuit brought about a voluntary
change in the defendant's conduct. See id. at 600-02.

 Drawing on Black's definition of "prevailing party" and its prior decisions, the
Supreme Court held that "prevailing party" status requires obtaining relief from the court (e.g.,
"enforceable judgments on the merits and court-ordered consent decrees") that effect a "material
alteration of the legal relationship of the parties." See id. at 603-05; see also id. at 605 (also
describing the standard as requiring a "judicially sanctioned change in the legal relationship of the
parties"). "A defendant's voluntary change in conduct, although perhaps accomplishing what the
plaintiff sought to achieve by the lawsuit," nonetheless failed to meet this standard, the Court
reasoned, because it "lacks the necessary judicial imprimatur for the change." See id. at 605. The
same would be true, the Court observed, for "private contractual settlements" whose terms were not
incorporated into a consent decree. See id. at 604 n.7. Applying these standards, the Supreme Court
rejected the catalyst theory and held that the plaintiffs were not "prevailing parties." See id. at 605. 

 Appellees assert that Wibbenmeyer's nonsuit and resignation from the TechTerra
board in response to this Court's affirming the denial of temporary injunctive relief "materially
altered the parties' legal relationship" within the meaning of Intercontinental and the
federal jurisprudence it incorporates. Appellees overlook the requirement that it must be a
judicial ruling, not a party's voluntary action, that effects the requisite material alteration of
the parties' legal relationship. See id. at 604-05. Thus, lower federal courts have applied the
Buckhannon analysis to defendants' claims for attorney's fees as "prevailing parties" and held that
a plaintiff's voluntary dismissal under Fed. R. Civ. P. 41(a)(1)(i)--the federal equivalent of
Texas Rule of Civil Procedure 162--does not confer "prevailing party" status on a defendant. See
RFR Indus., Inc. v. Century Steps, Inc., 477 F.3d 1348, 1353 (Fed. Cir. 2007). This is so because
the dismissal is not "judicially sanctioned"--the dismissal requires no court order--and there is no
"change in the legal relationship of the parties" because the plaintiff remains free to re-file its action,
as it was before litigation began. See id. (9)

 Wibbenmeyer's notice of nonsuit, as previously explained, returned the parties to the
identical legal position with respect to their rights under paragraph 9 of the shareholders' agreement
as they were before Wibbenmeyer filed his claims. Likewise, Wibbenmeyer's nonsuit of his
claims was not "judicially sanctioned"--he merely filed a notice, and appellees did not obtain an
order of dismissal or nonsuit. Consequently, under the concepts of "prevailing party" applied by the
Texas Supreme Court in Intercontinental, appellees were not "successful" or "prevailing" in
enforcing the shareholders' agreement. Accordingly, they are not entitled to attorney's fees under
paragraph 6 of that agreement.

 In a further alternative, appellees urge that we affirm the attorney's fees award on the
basis that the district court in substance or "impliedly" granted declaratory relief construing
paragraph 6's attorney's fee provision, thereby invoking the district court's discretion to award
attorney's fees under the UDJA. See Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (West 2008) ("In
any proceeding under this chapter, the court may award costs and reasonable and necessary
attorney's fees as are equitable and just."); see also Barshop v. Medina County Underground Water
Conservation Dist., 925 S.W.2d 618, 637-38 (Tex. 1996) (recognizing that courts may award
attorney's fees to a non-prevailing party under the UDJA). (10) Appellees emphasize that they pled
a claim for attorney's fees under paragraph 6 and that Wibbenmeyer joined issue by filing a
supplemental answer disputing whether appellees had "successfully enforce[d]" the shareholders'
agreement. They reason that both pleadings "invoked the equitable power of the trial court under
the UDJA to establish the rights of the parties . . . thus allowing for a fee award." Even if the record
reflects that the parties invoked the UDJA and the district court's judgment (which contains no
declarations) could be construed as granting declaratory relief, we would hold that attorney's fees
cannot be awarded under the UDJA under the present circumstances.

 Appellees' theory boils down to an assertion that even though they otherwise have
no statutory or contractual basis for recovering attorney's fees, they can nonetheless recover the
fees under the UDJA because they have obtained an "implied" declaration as to their statutory or
contractual basis for attorney's fees. This somewhat circular rationale runs afoul of "the rule . . . that
a party cannot use the [UDJA] as a vehicle to obtain otherwise impermissible attorney's fees." MBM
Fin. Corp., 292 S.W.3d at 669; see also id. (explaining that "[i]f repleading a claim as a declaratory
judgment could justify a fee award, attorney's fees would be available for all parties in all cases. 
That would repeal not only the American Rule but also the limits imposed on fee awards in other
statutes."). Consequently, assuming that the district court "impliedly" awarded declaratory relief
concerning paragraph 6's attorney's fee provision, the UDJA would not be a basis for recovering the
fees awarded in the judgment.

 Because there is no legal basis for awarding appellees attorney's fees in this case, we
sustain Wibbenmeyer's first issue, reverse the district court's judgment awarding appellees attorney's
fees, and render judgment that appellees take nothing on that claim. Given this holding, we need not
reach Wibbenmeyer's second and third issues. See Tex. R. App. P. 47.1.



 __________________________________________

 Bob Pemberton, Justice

Before Justices Patterson, Puryear and Pemberton;

 Dissenting Opinion by Justice Puryear


Reversed and Rendered


Filed: March 26, 2010
1. No vote was taken on the motion.
2. Appellees sought the following declarations:



 The voting covenant of paragraph 9 of the Shareholder Agreement applies only in the event
TechTerra's Board of Directors consists of three or more directors; and conversely . . . does
not apply if the Board of Directors consists of less than three directors.

 Neither TechTerra's Articles of Incorporation, its bylaws nor its Shareholder Agreement
contain any restrictions on shareholders amending TechTerra's bylaws to provide that the
Board of Directors shall consist of two members.

 On December 19, 2006, a TechTerra shareholders meeting convened at which the holders
of sixty percent or more of the then outstanding shares of TechTerra stock voted to approve,
and thereby approved, a bylaw change reducing the number of members on its Board of
Directors from three members to two.

 Defendants Behier and Seabolt did not breach the Shareholder Agreement by voting their
shares to amend TechTerra's bylaws to reduce the number of members of its Board of
Directors from three members to two.

 Defendants Behier and Seabolt will not breach the Shareholder Agreement by refusing to
elect Wibbenmeyer to the Board of Directors when the Board consists of only two members.
3. Appellees sought relief substantively identical to the first two declarations they sought.
4. Appellees assert that we should construe the shareholders' agreement against
Wibbenmeyer, who drafted it. This principle applies only when a contract is ambiguous. See
Gonzalez v. Mission Am. Ins. Co., 795 S.W.2d 734, 737 (Tex. 1990). Consequently, it does not
apply here. 
5. In a single sentence of his opening brief, Wibbenmeyer asserts that the "fee provision does
not, as the trial court concluded, award fees to any prevailing party, but only a prevailing party
who has 'specifically enforced' and 'successfully enforced' the agreement." (Emphasis added.) This
sentence potentially suggests that Wibbenmeyer is contending "successfully enforces" refers solely
to successful enforcement by specific performance, which is authorized in the immediately preceding
sentence of paragraph 6. However, Wibbenmeyer continues, "It is undisputed that Appellees never
sought specific performance or otherwise asserted or prevailed on any affirmative claims to
'enforce' the Shareholders' agreement." (Emphases added.) Elsewhere in his briefing,
Wibbenmeyer similarly argues that "successfully enforces" requires some form of affirmative relief
not limited to specific performance and present no argument or authority to support a position
that "successfully enforces" refers solely to enforcement by specific performance. To the extent
Wibbenmeyer is contending that "successfully enforces" refers solely to enforcement by specific
performance, we conclude that argument is waived, see Tex. R. App. P. 38.1(i), and we express no
opinion regarding such a construction.
6. Although Wibbenmeyer's notice of nonsuit stated that his dismissal was "with prejudice," 
that fact, in itself, does not change the analysis, and appellees do not contend it does. A voluntary
dismissal "with prejudice" does not have res judicata effect unless the trial court renders judgment
dismissing the claims on their merits, as occurs when a court renders judgment dismissing a
suit pursuant to a settlement agreement. See Cass Cty. v. Rambo, 143 S.W.2d 916, 920 (Tex. 1940)
(holding that voluntary dismissal pursuant to agreement to dismiss not amounting to settlement on
merits did not have res judicata effect); cf. Rhodes v. Prudential Leasing Co., 413 S.W.2d 404, 407
(Tex. Civ. App.--Austin 1967, no writ) (invoking the "rule that a judgment of dismissal entered into
by agreement of the parties in pursuance of a compromise, or settlement of a controversy, becomes
a judgment on the merits"). Appellees obtained no such judgment or order here. 
7. Of course, this Court's opinion in Wibbenmeyer's interlocutory appeal, while not directly
addressing the merits of his claims, may nonetheless be instructive regarding the legal viability of
any future similar claims.
8. Twin City Fire Ins. Co. v. Vega-Garcia, 223 S.W.3d 762, 769-70 (Tex. App.--Dallas 2007,
pet. denied); Hagberg v. City of Pasadena, 224 S.W.3d 477, 483-84 (Tex. App.--Houston [1st Dist.]
2007, no pet.); American Home Assurance Co. v. McDonald, 181 S.W.3d 767, 768
(Tex. App.--Waco 2005, no pet.); Dean Foods Co. v. Anderson, 178 S.W.3d 449, 455
(Tex. App.--Amarillo 2005, pet. denied); Pacific Employers Ins. Co. v. Torres, 174 S.W.3d 344,
346-48 (Tex. App.--El Paso 2005, no pet.).
9. On the other hand, the Fifth Circuit, among other lower federal courts, have held that
a plaintiff who obtains preliminary injunctive relief turning on a determination of the merits,
as opposed to a mere decision to preserve the status quo, may be deemed a "prevailing party" if
the ruling causes the defendant to moot the action through voluntary compliance. See Dearmore
v. City of Garland, 519 F.3d 517, 520-26 (5th Cir.), cert. denied, 2008 U.S. LEXIS 6325 (2008). 
The rationale for this holding is that the preliminary injunction is "judicially sanctioned" and
"materially alters the legal relationship between the parties," thereby satisfying Buckhannon. Id.
at 524 (temporary injunction "satisfied Buckhannon because it requires that a party obtain a
judicial ruling which results in a material change in the legal relationship between the parties"). 
Here, the rulings of the district court and this Court concerning Wibbenmeyer's entitlement to a
preliminary injunction turned largely on construction of paragraph 9 of the shareholders' agreement,
an issue that overlaps with the ultimate merits of his claims. In fact, as appellees emphasize,
Wibbenmeyer admits in his opening brief that he nonsuited after "[s]eeing the writing on the wall"
in our opinion. Nonetheless, whatever the practical effects of these rulings may have been in
influencing Wibbenmeyer's behavior, it remains that appellees did not obtain a judicial ruling
that altered the parties' legal relationship, as explained above. This is fatal to Wibbenmeyer's
attorney's fee claim under paragraph 6 of the shareholders' agreement.
10. In the context of their arguments addressed to Wibbenmeyer's second issue, concerning
whether appellees' attorney's fee claim survived his nonsuit, appellees urge that "attorney's fees as
a sanction is wholly appropriate in this case." To the extent appellees are arguing that the
attorney's fees award can be affirmed as sanctions, the district court's findings of fact and
conclusions of law reflect that it awarded fees based solely on chapter 38 and the shareholders'
agreement, and there are no findings that would support a sanctions award.